119 So.2d 282 (1959)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
William S. ROWND, Jr.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Ford GRAHAM.
Nos. 21181, 21182.
Court of Appeal of Louisiana, Orleans.
May 11, 1959.
On Rehearing December 14, 1959.
On Second Rehearing March 28, 1960.
Certiorari Denied May 31, 1960.
*283 W. Crosby Pegues, Jr., D. Ross Banister, Philip K. Jones, Brunswig Sholars, Baton Rouge, and Chester E. Martin, New Orleans, for plaintiff-appellant.
Ourso & Cosner, Hammond, for defendants-appellees.
JANVIER, Judge.
These two expropriation proceedings, which for trial were consolidated, were brought by the State of Louisiana through the department of Highways against William S. Rownd, Jr. and Ford Graham each of whom was the owner of five lots of land on the highway known as State Route No. 33, which extends from Frenier in a generally northwesterly direction across Pass Manchac to Pontchatoula, Louisiana. The land in question is about one-half mile on the southeast side of Pass Manchac and is southwest of the highway.
The two suits were brought under authority of the special highway expropriation statute, Act 107 of 1954, now LSA-R.S. 48:441 et seq. The Department of Highways, proceeding in accordance with the provisions of that statute, took the required steps looking to the expropriation of the two parcels of land, and, having reached the conclusion that each lot was worth $75, deposited in the Registry of the 29th Judicial District Court for the Parish of St. John the Baptist $375 to the order of each of the said landowners, and called upon each of them to show cause why the amount so deposited should not be accepted as the true value of the expropriated property.
*284 Each of the two landowners appeared and made certain technical defenses, all of which have since been abandoned, and each then asserted that the property in question was worth $450 per lot and that therefore each of the said owners was entitled to $2,250 instead of the $375 deposited.
Thereafter in each of the cases there was rendered judgment fixing the value of each said lot at $300 and thus fixing the value of the tract of land in each case at $1,500, and accordingly there was judgment in favor of each of the said landowners ordering the Department of Highways to deposit in each case an additional sum of $1,125, with 5% interest per annum from March 31, 1955, and there was further judgment ordering the Clerk of Court to pay to each of the said landowners the total amount due him as a result of the judgment, to-wit, $1,500 in each case.
There is some doubt, as the record now stands, as to whether the amount required in each case was paid by the Department of Highways directly to each landowner, or was deposited in the Registry of the Court. We say this because of the fact that, when the matter was argued before us, counsel for the two appellee landowners stated that the additional amounts had been paid by the Department of Highways directly to each of the landowner-appellees and that it was for this reason that there had been filed by the appellees motions to dismiss the appeals because of acquiescence. Because of that statement of counsel for the appellees we are not certain whether the payments were made directly to the landowners, or whether the necessary amounts were deposited in the registry of the court, although the judgment might seem to indicate that the amounts were deposited in court since the Clerk of Court is ordered to make each of the payments "from the deposit in the registry of this Court."
For reasons which we shall later set forth, we have found it unnecessary to determine whether the additional amounts of $1,125 in each case were deposited with the Clerk, or were paid directly to the appellees.
The Department of Highways appealed from each of the said judgments and it is those appeals which are before us.
The appeals were lodged in this Court on November 13, 1958, and on April 24, 1959, counsel for appellee-landowners filed motions to dismiss the appeals because of acquiescence by the Department of Highways. The motions to dismiss are opposed by the Department of Highways which, in addition to the contention that there has been no acquiescence, maintains also that the motions should not prevail or even be considered by us for either or both of two reasons: (1) It is asserted that the motions to dismiss were not filed within the three days as counsel say is required by Article 886 of our Code or Practice. (2) It is argued that the right to dismiss an appeal because of acquiescence in a judgment, which right is granted by Code of Practice Article 567, is given to the appellee only where the appellant is a defendant who is cast in the judgment appealed from, and that, where it is an unsuccessful plaintiff who has appealed, there can be no dismissal on motion of the successful defendant. Counsel direct attention to the fact that it is the Department of Highways which is the plaintiff and is appellant.
We cannot accept as sound either of these two contentions. As to the first, that such a motion must be filed within three days of the lodging of the record in the appellate court, we direct attention to the fact that it is not every motion to dismiss an appeal to which this three-day requirement is applicable.
Where acquiescence is relied on as warranting dismissal, it is entirely possible that the act which is pointed to as evidencing acquiescence may not have been committed until long after the expiration of the said three days. It necessarily follows that in such case the three-day requirement could *285 not possibly be applied. It might well be that, after the expiration of the three-day period, the party cast might voluntarily acquiesce by paying the amount or complying with the judgment and yet the appellee, because the three-day period had elapsed, could not be heard to move for the dismissal of the appeal.
In Associated Motors, Inc. v. Burk, 14 La.App. 361, 129 So. 196, it was contended that a motion to dismiss an appeal because of acquiescence could be filed only within three days following the lodging of the transcript. This Court, referring to such appeal, said that "a motion to dismiss because of acquiescence may be filed at any time." See, also, James v. Fellowes, 23 La.Ann. 37; Cockerham v. Bosley, 52 La. Ann. 65, 26 So. 814, 816; Jackson v. Parish of Vernon, 150 La. 1057, 91 So. 509; Succession of Vatter, 191 La. 875, 186 So. 597, and Haydel v. Major, La.App., 19 So.2d 628.
The second of those rather technical objections to the motions to dismiss is based on the theory that it is only where the confession or acquiescence in the judgment has been made by a defendant-appellant that the appellee may move to dismiss the appeal. The argument here is that in such suits as those the Department of Highways, in accordance with the statute, is not defendant but is plaintiff. In the first place, even if the wording of Article 567 of the Code of Practice could be interpreted as counsel would have us read it, we could not persuade ourselves to accept this strained construction of very plain language. It is true that the Department of Highways is technically the plaintiff. However, as a result of its being plaintiff, the owners of the land have sought and have obtained judgments against the Department of Highways.
Therefore, were it not for other provisions in our Civil Code and in our Statutes, we would be forced to hold that, where such a judgment has been rendered and there has been voluntary and full acquiescence, a motion to dismiss must prevail.
When we come to consider the question of whether there has been acquiescence in the judgment, we note in the first place that, although in the special highway expropriation statute, Act 107 of 1954, LSA-R.S. 48:441 et seq., there is no express provision which grants to the Department of Highways the right to appeal, there are provisions which seem to us to indicate clearly that the Department has such a right though, for reasons which we shall later give, such an appeal may be devolutive only.
There are two provisions in the statute to which attention should be directed. Section 459, captioned "Effect of appeal", provides that no appeal "shall operate to prevent or delay the vesting of title * * *." The other section of the statute which is important is Section 454. It is captioned "Trial according to general expropriation laws." It provides that, except where specially otherwise provided in this amendment of 1954, these expropriation suits by the Department of Highways "are tried in accordance with the provisions of the general expropriation laws."
When we refer to the general expropriation laws which are to be found in LSA-R.S. 19, we find that section 13, as amended by Act 706 of 1954 thereof, reads as follows:
"There is no suspensive appeal from any judgment rendered in an expropriation suit. When a devolutive appeal is taken by either party, payment to the owner of the amount awarded by the trial court, or the deposit thereof in the registry of the court, entitles the plaintiff to the property described in the judgment in the same manner as would a voluntary conveyance. If any change in the amount awarded is made on that appeal, the plaintiff shall pay the additional assessment or recover the surplus paid."
*286 We note also that Article 2634 of our Civil Code, LSA, has been amended by Act 705 of 1954 which is identical with LSA-R.S. 19:13.
Therefore the quoted provision of the general expropriation laws and the amended article of the Civil Code plainly indicate that where, after a trial, the value of the land taken is fixed at an amount greater than the amount of the original deposit, the additional amount required by the judgment may be paid either directly to the landowner, or deposited in the registry of the court and then withdrawn by the landowner, and they further plainly provide that should the amount awarded be changed on appeal, the necessary adjustment must be made. In other words, if the amount is increased, the plaintiff in the expropriation proceeding "shall be bound to pay the additional assessment," and if the amount is reduced, the party plaintiff in the proceeding shall "be entitled to recover back the surplus paid."
From these several provisions we reach the conclusion that the Department of Highways not only was within its rights, in appealing but as a matter of fact was bound by law, when appealing from the decision of the district court, to deposit the additional amount in the registry of the court, or to pay the necessary amount directly to the landowners, and that in doing either, it did not acquiesce in nor confess the judgments from which it had appealed.
The Court of Appeal for the Second Circuit had this identical situation before it in Louisiana Power & Light Co. v. Mosley, La.App., 18 So.2d 210, 215. The only difference between that case and those before us is that in that case it was private corporation which sought to expropriate, whereas here it is the State which is acting through the Department of Highways. If that constitutes a difference it does not effect a distinction. There the Court said:
"The deposit with the sheriff of the amount of the jury's award and payment of all costs of suit did not and could not constitute acquiescence in the judgment. This course is expressly authorized by Article 2634 of the Civil Code if the plaintiff in a case of this kind desires to, prior to hearing on appeal, take possession of the land involved therein. If the award is increased or decreased on appeal this law provides what shall be done in either event. In New Orleans, Fort Jackson & G. I. Railroad v. Mrs. Ada McNeely, 47 La.Ann. 1298, 17 So. 798, this question was considered. The court disposed of it tersely by saying: `The effect of the deposit by the corporation is to pass title from the owner to the corporation. It does not relate to the right of appeal. It remains unaffected by the deposit.'
"The same was held in New Orleans Terminal Company v. Firemen's Charitable Association, 115 La. 442, 39 So. 437.
"It is equally clear that the withdrawal of the tender money had no effect upon plaintiff's right to prosecute appeal."
We therefore conclude that the Department of Highways had the right to appeal, that it did appeal, and that the appeal should not be dismissed for acquiescence and that this is true regardless of whether the amounts required by the judgment were deposited and then withdrawn or were paid directly to the respective landowner-defendants. The motion to dismiss the appeals must be overruled.
This makes it necessary that we consider the evidence as to the value of the lands in question.
By agreement all the testimony was taken out of Court. The Department of Highways had made its estimate of value on the statements of three real estate brokers, but when the evidence was taken one of them was not available and the plaintiff therefore relied upon the evidence *287 of the other two, Walton R. Davies and Thomas George Womack, both of whom resided in Tangipahoa Parish, which is on the other side of Pass Manchac. We have no doubt that both of these men were experts in their field, though neither of them had had any real estate transactions in the immediate area of the land in question. Both based their estimates on the fact that the land in question had been acquired only a few years earlier at $35 per lot and both said that they felt that by doubling the cost price and adding $5 for each lot, a fair value had been arrived at.
The defendants relied on the estimates of Ben C. Boudreaux, Henry Matherne and Fernon E. Schexnayder. Mr. Boudreaux, who was not a licensed real estate broker, stated that he had been in the business of buying and selling real estate for about 35 years and during 15 years he had bought and sold probably "eighty percent of all of the land from Bonne Carre Spillway north to Manchac." He said that the lots in question were worth $500 each. His testimony was attacked because of his obvious interest in having it determined that land of that kind in that area was enormously valuable.
Mr. Schexnayder lived in the immediate vicinity of the land in question. He testified that he had sold three lots to the Department of Highways and that the agent of the Department who handled the transaction told him that "he was giving us about $300 per lot," and he added that he believed that the total which the Department paid him for the three lots was $1,000. It appeared, however, that the property which he had sold the Department of Highways was improved and that he had been paid for the land and the improvements $9,534. He said that, while he could not say that the Department of Highways had fixed the value of the lots separately from the value of the improvements, he felt that the lots were worth at least $300, and he said: "* * * I couldn't get the same lot now for that, they wouldn't sell it for that now."
Mr. Matherne had lived in the neighborhood from 25 to 30 years. He said that he had sold property to the Department of Highways and that the price paid him was $300 per lot. This was improved property and the deed by which the property was transferred did not show what part of the purchase price had been for improvements and what part had been for the land itself. He had been paid "close to $11,000.00, including everything." He did say, however, that when he was trading with the representative of the Department of Highways, he had been sent a letter in which an offer was made, and that when he discussed the letter with the agent, he was told that the amount offered was based on $300 for each lot and that the balance of the purchase price represented improvements. He made a note of these figures on a letter which had been sent him by the Department of Highways and the letter was offered in evidence.
While we find it difficult to believe that land of that charatcer, in that location, which the record shows was used only for camps for trappers and fishermen, could have been worth $300 per lot, we cannot say that the finding of the District Judge, based on the record which we have discussed, was manifestly erroneous.
In the matter entitled State of Louisiana, through the Department of Highways v. William S. Rownd, Jr., No. 21181 of our docket, the judgment appealed from is affirmed at the cost of appellant.
In the matter entitled State of Louisiana, through the Department of Highways v. Ford Graham, No. 21182 of our docket, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.
JANVIER, Judge.

On Rehearing
When these two expropriation proceedings were first before us, in addition to the dispute over the value of the lots which the Department of Highways was seeking to *288 expropriate, there was presented the question of whether the Department, by the deposit of the amount fixed in the judgment as the value of the land, had not evidenced acquiescence in the judgment and whether, as a result of the said deposit, the Department should not be held to have abandoned its appeals. We held that the deposit had not effected the abandonment of the appeals and we held also that the value of the lots$300 eachas determined by the District Court was correct.
On rehearing there is before us only the question of the value of the expropriated lots. In our original opinion we said:
"While we find it difficult to believe that land of that character, in that location, which the record shows was used only for camps for trappers and fishermen, could have been worth $300 per lot, we cannot say that the finding of the District Judge, based on the record which we have discussed, was manifestly erroneous."
These two suits were brought under authority of LSA-R.S. 48:441 et seq. which provide for expropriation suits by the Department of Highways and require the Department to follow certain procedure in arriving at the estimated value of the land sought to be expropriated and also require the deposit of the amount of the estimated value. When such suits are filed the owner may claim that the value of his property is in excess of the amount determined as a result of the procedure already referred to.
When the owner, who is the defendant in such a suit, claims that the value is in excess of the estimate, he, the defendant, as a result of LSA-R.S. 48:453, "has the burden of proving his claim." He must produce convincing evidence that the value is in excess of that shown in the estimate on which the Department of Highways has made the deposit.
A review of the records in these cases has convinced us that the defendants did not sustain this burden of proof. In the first place, it should be noted that the District Judge was in no better position than are we to determine from the demeanor of the witnesses which was apt to be correct for none of the witnesses appeared in person before the District Judge. The testimony of all of the witnesses was taken in the office of one of the attorneys and then submitted to the District Judge in written form.
There are involved in these two matters ten lots, five in each. These ten lots were part of a purchase of twenty lots which was made by William S. Rownd, Jr., from Williams, Inc., on August 21, 1950. Rownd had paid Williams, Inc., $700 for twenty lots, so that each of the twenty lots had, at that time, cost $35. On September 20, 1950, Rownd sold five of the lots to Ford Graham, the other defendant, for $175 so that in this sale also the price paid for the lots was $35 each. Of the twenty lots purchased by Rownd from Williams, Inc., apparently fifteen were still owned by him, though only five of that fifteen are involved in this matter.
While the record does not make it very clear, it does show that other similar lots were owned by a person named Folse who is not involved in either of these two suits and that the Folse property was acquired by the Department of Highways in January, 1952, in an agreed price which showed that $75 was paid by the Department of Highways for each lot. The record indicates that when the Folse property was appraised, the estimators fixed the value at $71.88 per lot and that the owner agreed to accept $75 for each.
We can find no other transfers of similar unimproved property in the vicinity of the lots with which we are concerned. Three witnesses testified for the defendants, Mr. Ben C. Boudreaux, Mr. Henry Matherne and Mr. Fernon E. Schexnayder. No one of these three was a real estate expert and apparently all three owned property in the vicinity and were therefore much interested *289 in establishing a high value for similar property.
Mr. Matherne, one of the witnesses for the defendants, said that he had sold property to the Department of Highways and that he had been told by a representative of that Department that in fixing the value on his improved property, $300 had been set as the value of each unimproved lot, and he also said that he would not sell other property which he owned in that area for $300 a lot. He stated that he had received a letter from the Department in which the Department had offered $10,550 for certain improved property which he had and that he had finally agreed to accept "about close to $11,000." He made a memorandum on this letter in which he had stated that the value of each lot was $300. There was no confirmation of this and the memorandum was not a part of the letter itself, but was a mere note which he himself had written on the letter. What caused him to write it or when he wrote it is not shown.
Another witness produced by defendants was Mr. Schexnayder who also said that a representative of the Department of Highways had told him that in buying property in that area "he was giving us about $300.00 per lot." This witness said that he also had sold to the Department improved property for a total of $9,534, and that he himself thought that in establishing this price $300 per lot had been fixed as the value of unimproved lots.
The other witness who testified on behalf of defendants was Mr. Boudreaux who lived in New Orleans and who was not a licensed real estate agent but who said that he spent practically all of his life in buying and selling real estate in the area of the property in question. He said that lots in that area were worth "in the neighborhood of $500 each." Neither he nor either of the other witnesses for defendants cited any specific sale which had been made in that general area.
As against the testimony of the three persons who obviously were interested in having high values placed on such property, the Department of Highways took the testimony of two real estate experts who had estimated the value of the property, and in doing so had taken into consideration the purchase price of $35 per lot and the fact that the Folse property had been acquired by the Department for $75 per lot. A third real estate expert who had assisted in arriving at the estimate used in bringing the expropriation suits had also estimated the value for this purpose at $75. He, however, was not placed on the stand since the record shows that he could not be located when it was necessary to call him as a witness.
We have given consideration to several decisions in which the Supreme Court has set forth rules which should be followed in arriving at values for purposes of expropriation, particularly we have noted Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; Domino v. Domino, 233 La. 1014, 99 So.2d 328 and Koerber v. City of New Orleans, 234 La. 433, 100 So.2d 461.
In the first place, we realize that in establishing a proper value where expropriation is necessary the Supreme Court said in City of Shreveport v. Abe Meyer Corporation, 219 La. 128, 52 So.2d 445, 447:
"* * * Article 2633 of the Civil Code, in speaking of true value, contemplates, of course, that the criterion to be used in expropriation proceedings in arriving at the basis for assessment is market valuethat is, the price which would be agreed upon at a voluntary sale between a willing seller and purchaser, taking into consideration all of the available uses of the land. * * *"
See, also, Koerber v. City of New Orleans, supra [234 La. 433, 100 So.2d 462], in which the Supreme Court quoted the following from Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6:

*290 "Whilst the fact that a piece of property may, at some time, become available for residential subdivision purposes, can be taken into consideration in fixing its market value in expropriation proceedings, it should be made to appear that there is some reasonable expectation that it might be so developed in the not too far distant future. * * *"
We think it quite evident that there is no reasonable possibility that within the reasonably contemplated future the property in question can be used for other than for the establishment of a hunting or a fishing camp. It is referred to throughout as swamp land and it is subject to frequent overflow.
Taking all of these factors into consideration and considering the fact that we have the estimates of three real estate experts as against the valuation fixed by three more or less interested parties, we have concluded that the $75 per lot fixed as the value by the experts should be accepted and that, by the payment of $75 for each lot the Department of Highways will have compensated each owner for the full value of his property.
As we said in our original opinion, the amount fixed in the judgment of the District Court for the value of each of the lots is $300, and since, upon reconsidering the evidence in the record, we find that the true value for the five lots is $375, the judgment appealed from in each case should be amended accordingly.
When we come to consider the costs of these proceedings, we find that, although LSA-R.S. 13:4521 exempts the State and its political subdivisions, public boards and commissions from the payment of court costs, this act has no application to the costs expended by defendants in expropriation proceedings. See Housing Authority of New Orleans v. Polmer, 231 La. 452, 91 So.2d 600; Westwego Canal & Terminal Co. v. Louisiana Highway Commission, 200 La. 990, 9 So.2d 389. We further find that, as a result of LSA-R.S. 19:12, if a tender of the true value of the property has been made to the owner and the owner has refused to accept it, the costs of the proceedings shall be paid by the owner. There is nothing in this record to indicate that an actual tender of $75 per lot was made to each of the landowners and accordingly we have no authority to assess the costs against them. Consequently the court costs incurred by the defendants in these proceedings, including costs of appeal, are to be paid by plaintiff. See Housing Authority of New Orleans v. Polmer, supra; State, through Department of Highways v. Barineau, 225 La. 341, 72 So. 2d 869.
For the reasons assigned the judgment appealed from in the case of State of Louisiana, through the Department of Highways v. William S. Rownd, Jr., No. 21 181 of our docket, is amended by reducing the award in favor of defendant from $1500 to $375; all court costs incurred by defendant William S. Rownd, Jr., in these proceedings to be paid by plaintiff. As thus amended and in all other respects the judgment is affirmed.
It is further ordered, adjudged and decreed that the judgment appealed from in the case of State of Louisiana, through the Department of Highways v. Ford Graham, No. 21 182 of our docket, is amended by reducing the award in favor of defendant from $1500 to $375; all court costs incurred by defendant, Ford Graham, in these proceedings, to be paid by plaintiff. As thus amended and in all other respects the judgment is affirmed.
Amended and affirmed.

On Second Rehearing
REGAN, Judge.
A careful reconsideration and thorough analysis of this matter convinces us that our former opinion and decree are correct and that they should be reinstated.
Counsel for plaintiff allege error in assessing court costs against it, for under *291 LSA-R.S. 13:4521[1] it is exempt from paying any court costs other than stenographers' fees, and further, that it is not liable for the defendants' costs since the true value of the property was in effect tendered to the defendant by virtue of depositing the funds therefor in the registry of the court upon institution of this suit, and it has finally been determined that the amount deposited, $375, is the correct amount. Counsel, therefore, conclude that all costs accruing after the deposit in the registry of court, which in effect is a tender, should be paid by the defendant.
We agree with counsel's initial contention that the state is exempted by statute from paying its own court costs other than stenographers' fees; we think that we made this fact clear in our opinion rendered on December 14, 1959. However, we find no merit in its argument urged to avoid payment of all costs incurred by the defendant. We find no evidence in the record indicating that the State of Louisiana, Department of Highways, actually tendered payment to the landowner, as contemplated by the statute, before instituting this proceeding, despite the fact that the correct amount was deposited in the registry of the court when suit was filed, and we think that in the absence of tender the expropriating body is liable for all costs incurred by the defendants under the clear provisions of LSA-R.S. 19:12.[2] Therefore, the analogy urged by counsel for plaintiff that a deposit in the registry of the court at the time of institution of the suit is the same as tender for the purpose of assessing costs is in contravention of the express statutory law of the State. The relief which plaintiff requests impresses us as a legislative prerogative and not a judicial one.
For the reasons assigned, our opinion and decree, rendered on the first rehearing, are reinstated as the final judgment of this court.
Decree on first rehearing reinstated.
NOTES
[1] "Except as hereinafter provided, neither the state, nor any parish, municipality, or other political subdivision, public board or commission, shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state or any such parish, municipality or other political subdivision, board or commission. This Section shall have no application to stenographers' costs for taking testimony."
[2] "If a tender is made of the true value of the property to the owner thereof, before proceeding to a forced expropriation, the costs of the expropriation proceedings shall be paid by the owner." (Emphasis added)