JOHNSON, Judge.
Defendants appeal from a judgment m favor of the plaintiff, State of Louisiana, through the Department of Highways, dismissing defendants’ reconventional demand to increase the award for defendants’ property expropriated by plaintiff for a certain highway construction project.
Defendants’ property, located within the city limits of New Orleans, bearing municipal number 8416 Airline Drive, and included within the right of way required for the construction of State Project #283-08-05,. Carrollton-Airline Interchange (Stage II),. Pontchartrain Expressway, was expropriated by plaintiff on December 30, 1957, in. accordance with the provisions of LSA-R.S. 48 ¡441-48:460. At that time, the State-of Louisiana, through the Department of Highways, deposited in the registry of the-Civil District Court for the Parish of Orleans the sum of $12,550 as just compensation for the property.
Subsequently defendants filed an answer alleging that $12,550 was not the fair market value of the property and then reconvened for $18,500, alleging that sum to be the fair market value of the subject prop *320 erty as of December 30, 1957. The trial judge rendered judgment for plaintiff and dismissed defendants’ reconventional demand and defendants perfected this appeal.
The testimony shows that the property in question is designated as lot P of Square 641, Seventh District, with improvements. Square 641 was originally bounded by Cam-bronne, Marks, Joliet and Peach Streets, with lot P having a front of 25 feet on the south side of Marks Street. When the Tulane Avenue-Airline Highway overpass was laid out years ago, part of Square 641 including the north end of lot P was taken by the State. Before the overpass was actually built the residence now owned by defendants was either moved to or constructed on what remained of lot P facing the Airline Drive, which later was occupied by the elevated overpass, leaving this subject property with no street frontage on any side. After the end of lot P was taken by the State, the front line across the lot was in a diagonal direction and measured 49 feet 5 inches. One side was 106.8 feet, the other side was 127.3 feet and 45 feet in width along the back line. Access could only be had by going under the overpass.
The improvements consisted of a one story duplex, frame construction with asbestos shingles; two single galvanized metal garages with dirt floors, and a frame shed built onto the rear of the residence. Sometime prior to the taking the double residence of three rooms and bath on each side had been converted to single occupancy by cutting a door in the division wall. The property was occupied by defendants and their children.
The principle is well settled in this State that the measure of compensation for expropriation of private property is the market value of the property, that is, the price that would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. Also that the best guide in determining market value is evidence of private sales of comparable property in the vicinity. State Through Department of Highways v. Havard, 239 La. 133, 118 So.2d 131, and cases cited therein. This does not exclude other recognized methods of determination where applicable. Efurd v. City of Shreveport, 235 La. 555, 105 So.2d 219 and cases cited therein.
Two expert appraisers for the plaintiff and two for the defendants all utilized the comparable sales method in arriving at their respective appraisals of the property, although each also considered reproduction cost as a guide or check.
Mr. Omer F. Kuebel, expert appraiser for defendants, said the subject property was worth $15,000. He utilized five sales in determining his estimate. Two of these sales have not been considered by this court, because one was that of unimproved land and the other was a sale completed approximately seven months after the subject property was expropriated.
Undoubtedly a big factor to be considered in determining the market value of the subject property is the location of the pre-ex-isting Tulane Avenue-Airline Highway overpass twenty-five feet in front of the property. Mr. Kuebel gave the subject property a twenty per cent obsolescent penalty because of the overpass. Considering, in addition to the close proximity of overpass, the inaccessibility of subject property, the penalty of twenty per cent is too conservative.
To bring the subject property up to his appraisement and in line with the prices recited in the sales to which he refers, Mr. Kuebel estimated the reproduction cost of the residence at $9.70 per square foot, the garages at $4.50 and the shed at $4.00. His net result after allowing depreciation is $9,726.44 as the market value of all the improvements, plus $5,400 for the land, all of which he rounds out to $15,000. With pencil and paper the author of this discussion cannot bring the calculations with his units to the same result. Be that as it may, *321 his estimate of the square foot cost of the house is only slightly higher than that used by the other appraisers, yet the square foot cost he applies to the garages and shed are clearly excessive, as even a layman can see by the photographs in evidence. (Ex. P-9, 10, 11.) The use of the shed is not explained, but, actually, it is so crudely constructed it is an eye-sore, which detracts from the appearance of the property. Mr. Derbes, the expert appraiser for plaintiff, questions the utility of the garages and the shed. He says the garages are too small to serve that purpose, and apparently they are not used as garages as there is no means of access with an automobile.
Mr. Frederick M. Guice, the other appraiser for defendants, fixed the market value of the lot and improvements at $14,-425 by comparing one sale on Leonidas Street “just around the corner” from a colored neighborhood, which property he did not inspect on the inside; another sale on Stroelitz Street in a predominantly colored settlement, and another property on the same street with a lot only 50 to 70 feet, which sold for $12,100. Obviously this testimony is not impressive as the properties referred to are clearly not applicable.
Mr. Max Derbes, Jr., expert for plaintiff, grew up in this section of New Orleans, with which he and his father have been closely associated. They have managed properties there. He recited several transactions in the immediate vicinity of subject property which were clearly comparable in many respects. His calculations arrived at a market value of subject property at the time of taking of $1-2,550.
At page 124 of the transcript Mr. Derbes said:
“We have researched as of 1956, 1955, about 9 months of 1957, every sale , that took place, and I will say that I have selected those sales which produced the highest effective value to justify my position of $12,550.00, and I have not omitted any sale that would indicate a higher value for the subject property * *
Mr. Billy J. Paletou worked along with Mr. Derbes in researching the data and in the examination of the properties, but he says he made his appraisement independently and separately. He corroborates Mr. Derbes in his evaluation.
The trial judge gave written reasons for his judgment fixing the value of the subject property at $12,550, as follows:
“The subject property has long since been demolished and construction of the Carrollton Interchange has progressed to such an extent that inspection of the site of the subject property is impossible for all practical purposes, and it is necessary to depend on the photographs in evidence and the general layout of the interchange in order to visualize the situation. However, I have personally viewed all com-parables mentioned of record, and from the testimony, reinforced by a personal view, I am of the opinion that the property 8724/6 Marks Street is very closely comparable in neighborhood, in area of lot, size of building, and is remarkably similar in general appearance to the photograph of the subject property.
“This Marks Street property sold in February, 1956 for $13,500.00.
“I am of the opinion that the ap-praisement of $12,550.00 put on the subject property by the Highway Department is reasonable and fair considering that the Marks Street property fronts on a black top street, while the subject property was in the shadow of the old Tulane overpass and had no street in front of it, just a narrow space between .it and the overpass.”
It has been said by appellate courts all over the land so many times that unless a trial court is in manifest error his judgment must be affirmed, that the citation of authorities to justify the application of *322 that principle is wholly unnecessary. We go further and say that we not only find no error in the judgment appealed from, we agree that the trial court’s ruling is manifestly correct. The evidence is clearly with the plaintiff.
As stated in State Through Department of Highways v. Rownd, La.App., 119 So.2d 282, 288, the defendant “must produce convincing evidence that the value is in excess of that shown in the estimate on which the Department of Highways has made the deposit.” The defendant herein did not do that.
For these reasons the judgment appealed from is affirmed at the cost of defendants.
Affirmed.