170 So.2d 5 (1964)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
Irene Fontane BADDOCK et al., Defendant-Appellant.
No. 6226.
Court of Appeal of Louisiana, First Circuit.
November 16, 1964.
Rehearing Denied December 21, 1964.
Writ Refused February 5, 1965.
*7 Benton & Moseley, Baton Rouge, for appellant.
W. Crosby Pegues, Jr., D. Ross Banister, Glenn S. Darsey and Chester E. Martin, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
ELLIS, Judge.
The facts in the instant litigation are essentially as set forth by the trial judge in his written reasons for judgment which were in turn adopted from the defendant's brief presented to the lower court. We quote from the reasons for judgment of the lower court as follows:
"`This is an expropriation suit filed by the State of Louisiana through the Department of Highways under Article VI, Section 19.1 of the Louisiana Constitution [LSA] and Title 48, Sections 441 to 460 of the [LSA] Revised Statutes, for a right-of-way within the controlled access facility known as the Baton Rouge Expressway. $47,538.00 was deposited in Court as estimated just compensation at the time the suit was filed.
"`Subsequently, the Department concluded it would require additional right-of-way, and on June 28, 1962, it filed a supplemental and amending petition (requested that a revised description be substituted for expropriated Parcel No. 8-3, and that a new marked "Exhibit P-3A" annexed, be substituted for the original Exhibit P-3) and secured a supplemental and amending order of expropriation on *8 depositing the additional sum of $797.00 in Court. Thus, the total deposit was revised to $48,335.00, of which amount $42,074.00 was estimated value of land and improvements, and $6,261.00 estimated damages.
"`All defendants answered both petitions, and withdrew the sum deposited from the registry of the Court without prejudice to their right to claim additional compensation. One defendant, a former lessee, alleged its lease had been abrogated by both the expropriation and lease provision, and submitted the matter without making claim. The remaining two defendant-owners did not contest the taking, but claimed just compensation in excess of that deposited.
"`Prior to the taking, the owners' property consisted of a tract of land in an area designated as A-1 for zoning purposes in the general vicinity of the City Park Lake in the City of Baton Rouge, measuring approximately 78,424 square feet and having 174.24 feet frontage on the South side of Baywood Street, extending through to Fiero Street, and having a frontage of 182 feet on the North side of Fiero Street. The depth of the tract was 478 feet on the West line, and 427 feet on the east line.
"`The improvements on this tract consisted of a total of six buildings, excluding carports. Two solid brick homes fronted on Baywood Street and contained approximately 1800 square feet each, with a carport to the rear for each. The remaining improvements to the South consisted of four duplex residential structures containing 8 rental units, each structure containing approximately 2,050 square feet. There was also a concrete block carport 80' × 20', with a sufficient area to accommodate the vehicles owned by the occupants of the apartments. This description accords with the identity of the entire tract specified by the Department of Highways, in both Exhibits P-3 and P-3A.
"`The portion of the property expropriated consists of an area approximately 175 × 150 feet, extending diagonally across the approximate center of the property, and included three of the Duplex buildings containing six of the apartments.
"`After the taking, the remainder was completely separated, the North portion containing two houses and carport, and the South portion containing one duplex and the carport which could accommodate eight vehicles, the two parcels having no access from one to the other.'
* * * * * *
"Mr. Kermit Williams and Mr. W. D. McCants were the expert witnesses testifying on behalf of the owners, and Mr. Leroy Cobb and Mr. J. B. Pugh were the experts testifying on behalf of the State.
"The testimony of the foregoing experts is set forth as follows:

APPRAISER LAND IMPROVEMENTS DAMAGES TOTAL
Williams $18,140.00 $30,000.00 $24,245.00 $72,385.00
McCants 19,533.00 32,195.00 25,014.00 76,742.00
Cobb 11,163.00 31,590.00 3,895.00 46,648.00
Pugh 11,783.00 31,777.00 4,733.00 48,293.00

"Pictures introduced as Exhibit D-7 reflect the improvements taken, and it is fair to state that the three duplex apartments expropriated were in excellent condition and choice rental-producing property located in a quiet and *9 peaceful section of our city. It is also an absolute fact that the State can discredit the testimony of the land owners' experts and that the land owners can discredit the testimony of the State's experts. It is no wonder when `experts' vary as much as $30,104.00 on the taking of three duplex apartments.
"The vast area of difference between the experts is their appraisement of the land value and in the area of the proper amount to assess as damages. The argument with regard to land value centers around whether or not the property should be valued on a square foot basis or on a front foot basis. In this case, however, the front foot basis seems inappropriate, inasmuch as the property expropriated was in the center of a tract which fronted on two streets. Fiero Street, in the opinion of the Court, is nothing more than an alley (the back entrances to at least six fine homes fronting on the lake are located on Fiero Street), and Baywood Avenue is a street in one of the city's finer subdivisions (Hillsdale). The defendant has two very neat brick homes fronting on Baywood Street and a duplex with an eight-car carport on Fiero Street. This adequately illustrates the folly of using a price per front foot basis.
"The Court is further of the opinion that the plaintiff has adequately discredited the testimony of the defendants' witnesses insofar as their computation of land value is concerned when he accurately states:
"`Cross examination revealed that the sale of Reymond to Stoneman which Williams and McCants used showed a consideration of $10,000.00 (which they used) and other good and valuable consideration which they ignored. And it turned out that the sale was of a lot and residence for some $30,000.00 to $40,000.00. Mr. Williams used this to arrive at an "adjusted" square foot value for the expropriated property of 97¢ per square foot, a component in his averaging.
"`Cross examination also revealed that the sale of Powell to White, used by Mr. Williams and McCants, was a sale between mother and son or aunt and nephew and was a financing arrangement for the building of a house upon the lot, where the recited sale price was obviously not paid but was used to justify the loan for the construction of the house. Mr. Williams used this sale to obtain the adjusted value of 87¢ per square foot for the expropriated property and it was a component of the averaging by Mr. Williams (and McCants) by which Williams arrived at 80¢ per square foot for the Baywood lots and he adjusted downward to 65¢ per square foot for the Fiero lots.'
"This clearly indicates to the Court that the land values of the defendants' witnesses cannot be relied upon, not only for the above reason but also especially because they all come from the Hillsdale area, and the subject property expropriated is in no way similar or comparable to the Hillsdale property as far as value is concerned.
* * * * * *
"The experts were in very close agreement on the value of each duplex apartment taken, and giving weight to all of their testimony in this regard, the Court fixes the value of these duplexes at the sum of $35,400.00. The computation of value here is identical to that used by defendants on page twelve of their brief."
The trial judge arrived at a value of the land taken by averaging the estimates of the four appraisers, and, accordingly, awarded $15,172.00 for this item. While we do not approve of the method employed *10 by the lower court, we are convinced from the evidence the amount of the award is correct and does justice between the parties. Neither party is contesting the award of the lower court as to the value of the land and improvements.
The lower court rendered judgment in favor of the landowners for $50,572.00, representing the value of land and improvements taken. The defendant landowner urges no error in that award but has perfected this appeal from the ruling of the trial court denying recovery of any sum for damages.
We cannot agree with the trial court that no severance damages have been suffered by this property. It is true that the remaining improvements have not suffered any severance damages. They were not in any way touched and they are as useful today as they were prior to the taking. The duplex is still rented for the same amount as before the taking. Some point was made that the present tenant has refused to renew the written 18 month lease. However, this fact does not tend to prove that the property is less valuable. There could be any number of reasons why the tenant would not wish to renew the written lease.
The two single dwellings are not available for rental at this time as the owner is using both of them for his own purposes. There is no evidence to indicate that they were in any way made less valuable. Ample land surrounds both dwellings and the duplex in their present condition to render them entirely satisfactory for rental property.
An obvious exception to the foregoing is, of course, the eight-automobile garage, which was rendered three-fourths useless, by the loss of six apartments. Mr. Cobb testified that the depreciated value of the garage was $2,135.00.
The fact remains that the State's appraisers testified on the trial that the severance damage amounted to $3,895.00 or $4,733.00 respectively. The defendants' expert witnesses were of the opinion that the land and buildings remaining had been damaged 35 to 40 percent by the taking. This opinion is completely unsupported and must be rejected as speculative. There was no satisfactory evidence as to whether property located adjacent to a limited access expressway is increased or decreased in value by virtue of its surroundings. Had it been proven the remaining property had increased in value as a result of the taking, it could have been used to offset claimed severance damage.
LSA-R.S. 48:442 sets forth the requirements of a petition for expropriation under Act 107 of 1954. Among other things the statute requires that there be annexed to the petition "A statement of the amount of money estimated to be just and adequate compensation for the taking, showing any estimate of damages as a separate item." In the instant case such statements were attached to the original and supplemental petition estimating damages at the total sum of $6,261.00.
Mr. Cobb, who signed the initial statement, testified that severance damages amounted to only $3895.00. Mr. Pugh, who also signed the initial statement, testified that the severance damages totaled only $4,733.00. The initial statement itself estimated that the severance damages were $5,926.00. The second statement which was signed by two other appraisers who did not testify estimated there were additional severance damages in the amount of $335.00, for a total estimate of $6,261.00.
Having attached the statements of reasonable value of the land and improvements to the petitions for expropriation and paid that amount into the registry of the court, the Highway Department is bound to those statements as a minimum value of just and adequate compensation for the expropriated property, consisting of the land and improvements, and cannot thereafter contest or deny this amount to the prejudice of the claimant except in a *11 case of fraud or in an effort to show that the amount of the initial deposit was adequate.
In reaching this conclusion, this court is aware of the fact that it is either overruling or enlarging the per curiam opinion in the case of State v. Lewis, 142 So.2d 652. We believe, however, that the following language in the original opinion in the Lewis case found on page 655 was correct if applied only to the deposit of the State for land and improvements:
"Under the pleadings the condemning authority cannot produce evidence for the purpose of lowering the estimated amount deposited in the court as a value of the property taken, but such evidence, if it be by witnesses as in this case expressing views that the value is less than the estimated deposit, is admissible for the purpose of showing only that the estimated deposit is adequate."
In cases involving a dispute as to the amount of damages incurred, the rule of law above enunciated is subject to an exception so as to allow proof by the State that the damages have diminished between the date of statement of adequate compensation and the date of the trial, as the statutory measure of severance damages must be made on the latter date. However, for the expropriating authority to be entitled to an award for severance damages less than the amount of its original deposit, there must be testimony to explain the cause or causes for the diminution in value as of the time of deposit and trial. There is no such testimony in this record and therefore the original estimate of $6,261.00 must stand rather than the unexplained lower amount testified to on the trial.
The above is in entire accord with the law applicable as set forth in LSA-R.S. 48:456, which provides:
"If the compensation finally awarded exceeds the amount so deposited, the court shall enter judgment against the department and in favor of the persons entitled thereto for the amount of the deficiency.
"If the compensation finally awarded is less than the amount so deposited, the court shall enter judgment in favor of the plaintiff and against the proper parties for the amount of the excess."
The first paragraph above refers to an increase in the value of the land and improvements and/or the severance damage so that the total award exceeds the deposit made by the State for land and improvements and the final amount awarded for severance damages whether the latter be less or more than the original deposit therefor.
The second paragraph provides for an award which is less than the amount deposited, which might be brought about by proof of diminution in value of severance damages as of the time of trial from the estimate made for such damages at the time of taking. It does not refer to any reduction in the award as to the amount deposited by the State for the land and improvements at the time of taking. No reduction can be made in this award below the amount deposited by the State. It can only be increased by proof and the burden is on the defendant landowners.
The taking of property by expropriation is in the nature of a voluntary conveyance, the consent of the unwilling owner being presumed and supplied by the weight of public necessity. Title to the property expropriated passes to the State immediately and the landowner, thereafter, under LSA-R.S. 48:445 is vested with a statutory and constitutional cause of action to secure "adequate compensation". Neither this nor any other statute or constitutional provision recognizes a cause of action in the expropriating authority to thereafter litigate the "over-adequacy" of the price paid, other than for severance damage.
*12 The filing of the original petition and the supplemental petition for expropriation with the attached statements of the estimated value and estimated damages, which statements must under LSA-R.S. 48:442 itemize severance damages as a separate item, is a judicial admission. Absent a showing of fraud or error the Highway Department cannot deny the truth of its own admission. As we have already stated, evidence of a lower value as to land and improvements will be admissible for the limited purpose of showing that the estimate contained in the statement attached to the petition was adequate. In order for the courts to award less than the amount deposited for severance damages as shown by the original estimate at the time of taking, the testimony must satisfy the court that such reduction is proper by testimony which reveals a justification for reduction at the time of trial.
Accordingly we believe that the estimated amount of the severance damages, $6,261.00, is the minimum which should have been allowed by the trial court. There will be judgment herein increasing the amount awarded by the trial court by $6,261.00, making a total award of $56,833.00 to include the value of the land and improvements taken and the damages to the remainder.
Affirmed in part; reversed in part.
ON APPLICATION OF THE STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF HIGHWAYS, PLAINTIFF-APPELLEE, FOR REHEARING.
Before ELLIS, LOTTINGER, LANDRY and REID, JJ.
PER CURIAM.
In applying for a rehearing in this matter learned counsel for plaintiff, State of Louisiana, Through the Department of Highways (sometimes hereinafter referred to simply as "appellee" or the "Department"), contends, inter alia, we erred in holding the Department is bound by the sum of the initial deposit and is prohibited from seeking reduction in the amount of estimated damages initially tendered as compensation for lands actually expropriated.
The forcefulness of esteemed counsel's argument in this regard has impelled us to reconsider our views in this respect. Upon further deliberation of this aspect of the present case we are constrained to agree the rule enunciated in our original decree does not accord with what we now believe to be the intent and purpose of LSA-R.S. 48:441-460, inclusive, and more particularly LSA-R.S. 48:456 which provides as follows:
"§ 456. Judgment as to difference awarded
"If the compensation finally awarded exceeds the amount so deposited, the court shall enter judgment against the department and in favor of the persons entitled thereto for the amount of the deficiency.
"If the compensation finally awarded is less than the amount so deposited, the court shall enter judgment in favor of the plaintiff and against the proper parties for the amount of the excess."
It is now established jurisprudence that the statute in question (Act 107 of 1954) is closely patterned after the Federal Declaration of Taking Act and that interpretations of the Federal Statute by the courts of the United States will be considered by the courts of this state in adjudging the intent, purpose, scope and application of our own state law on the same subject matter. State of Louisiana Through the Department of Highways v. Macaluso, et al, 235 La. 1019, 106 So.2d 455.
In United States v. Miller (1943) 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 *13 A.L.R. 55, the United States Supreme Court considered the question whether the Federal Government was entitled to recover the difference between the initial deposit and the lesser sum awarded three of the landowners by a jury after trial. The landowners contended the government was without right to recover such excess because although the statute provided that the landowner was entitled to recover the excess of value shown on trial over the amount of the deposit, there was no corresponding provision permitting the government to recover in the event the deposit be shown to exceed the land's value.
In disposing of this issue adversely to the contention of the property owners, the United States Supreme Court observed as follows:
"The purpose of the statute is two-fold. First, to give the Government immediate possession of the property and to relieve it of the burden of interest accruing on the sum deposited from the date of taking to the date of judgment in the eminent domain proceeding. Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the Government's estimate of the value of the property. The Act recognizes that there may be an error in the estimate and appropriately provides that, if the judgment ultimately awarded shall be in excess of the amount deposited, the owner shall recover the excess with interest. But there is no correlative provision for repayment of any excess by the owner to the United States. The necessary result is, so the respondents say, that any sum paid them in excess of the jury's award is their property, which the United States may not recover.
"All the provisions of the Act taken together require a contrary conclusion. The payment is of estimated compensation; it is intended as a provisional and not a final settlement with the owner; it is a payment `on account of' compensation and not a final settlement of the amount due. To hold otherwise would defeat the policy of the statute and work injustice; would be to encourage federal officials to underestimate the value of the property with the result that the Government would be saddled with interest on a larger sum from date of taking to final award, and would be to deny the owner the immediate use of cash approximating the value of his land."
It is of some significance we believe that the United States Supreme Court reached the above conclusion with regard to a statute which does not go so far as our own in that the Federal statute therein construed contains no express provision permitting the expropriating authority to recover in the event the amount of its deposit exceeded the value of the land established upon trial.
After further consideration of the subject matter and particularly the second paragraph of our own statute, namely LSA-R.S. 48:456, which provides that if the compensation finally awarded is less than the amount deposited the court shall enter judgment in favor of the expropriating authority and against the proper parties for the amount of the excess, we are led to the conclusion that the purpose of our own statute is two-fold: First, its intent and design is to relieve the state of the obligation of paying interest on the sum deposited in the registry of the Court from the date of taking to the date of judgment; secondly, to afford the landowner immediate cash compensation to the extent of the just and adequate compensation for the taking as well as any severance damages estimated by the expropriating authority to be due. In these respects the Department must specify an estimated just and adequate compensation which will accord as nearly as possible with the requirement *14 of Article I, Section 2 of the Louisiana Constitution LSA which provides that private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid therefor.
Once these constitutional requirements are satisfied, the Department has fulfilled all preliminary determinations both as to the value of the property expropriated and severance damages which may be due. Thereafter, as observed by us in State through Department of Highways v. Kurtz, La.App., 143 So.2d 761
"When the owner claims the value of the expropriated property is in excess of the estimate, he has the burden of proving his claim and he must produce convincing evidence that the value is in excess of that shown in the estimate on which the Department of Highways has made the deposit. LSA-R.S. 48:453; State Through Department of Highways v. McNeely, La. App., 130 So.2d 136; State Through Department of Highways v. Rownd, La.App., 119 So.2d 282."
The same rule is applicable, of course, when the defendant owner claims severance damages in excess of the amount thereof shown in the Department's statement and certification of such estimated damages.
However, should the Department seek at the trial any determination of just and adequate compensation, whether for the land taken or severance damages, lower than the estimate contained in its initial petition, it is incumbent upon the Department to so notify the defendant by filing an amended pleading setting forth this revised sum and give satisfactory reasons therefor at the trial. An amendment of this nature appears to be permitted within the liberal terms of Articles 1154 and 1151 LSA-C.C.P.
The procedure suggested appears to accord with the provisions of LSA-R.S. 48:442(4), (which section prescribes the content of the petition to be filed by the Department) and with the obligation imposed on the landowner in State v. Hyland, La. App., 148 So.2d 886, 888 to the effect the defendant, in order to claim an amount in excess of the deposit must file an answer expressly asserting his right to an amount over and above that deposited by the Department.
Where, however, as in the case at bar, the Department has neither filed such amendment nor offered satisfactory explanation by competent witnesses of an excess of the deposit over the value shown upon trial, the landowner is entitled to the amount deposited. Our review of the testimony in the instant case leads to the conclusion the Department's testimony fails to establish the owner is entitled to a sum less than the $6,261.00 estimated damages shown on the Department's certificate of just and adequate compensation and deposited with the filing of the initial petition. Because of the Department's failure to affirmatively show actual damages were less than the amount of the deposit, the owner is entitled to the sum placed in the registry of the Court.
Rehearing denied.