LOTTINGER, Judge.
This is an expropriation proceeding instituted by the State of Louisiana, through the Department of Highways (hereinafter sometimes referred to as the Department) of a parcel of land, together with the buildings and improvements situated wholly or partially thereon, owned by the defendant, William J. Bassemier, for highway purposes and specifically for State Project No. 454-03-03, Holden-Hammond Interstate Highway in Tangipahoa Parish on State Route La 1-12, which project provides for the construction of a controlled access highway, pursuant to the authority conferred by Section 19.1 of Article VI of the Constitution of the State of Louisiana and the provisions of LSA-R.S. 48:441-48:460. The Trial Judge ruled in favor of the Department and against the defendant, sustaining and confirming the amount of $5,188.00 deposited by the Department as the market value of the property expropriated and as just and adequate compensation. From this judgment, defendant-appellant, William G. Bassemier, has appealed.
The whole of the property prior to the taking was an irregular shaped lot consisting of 1.081 acres with a 20 foot frontage on Pumpkin Center Road in the form of a lane leading to the main portion or residential area. The 20 foot lane was approximately 100 feet in length. There were houses on both sides of this lane. After the taking, the remainder consisted of 0.39 of an acre with a 264.80 foot front *882 age on the road. The remainder tract is in the general shape of a right triangle with the 264.80 foot frontage as the hypotenuse with the two remaining legs being 158.17 feet and 212.34 feet each.
The improvements located on the taken property consisted of a five room residence plus a screened porch, storeroom, utility room and carport. Also located on the premises was a water well and a shed to house the well.
This suit represents a partial taking and the sole issues are the market value of the property expropriated and the value of severence damages, if any, to the remainder property.
The determination of the market value of the property taken and of the value of severance damage, if any is concluded to exist, are factual issues. State of Louisiana, Through Department of Highways v. Cenco, Inc. et al., La.App., 187 So.2d 162 (1966) and State of Louisiana, Through Department of Highways v. Gielen et al., La.App., 184 So.2d 737 (1966).
The Department placed two experts on the witness stand to testify as to the value of the property taken and as to whether any severance damages were due. First they called Mr. Darrel V. Willet, a member of the Appraisal Institute, commonly referred to as MAI, and of the American Institute of Real Estate Appraisers. Mr. Willet placed a total value for land and improvements at $5,188.00. He appraised the land value at $600.00 per acre.
In reaching a value conclusion for the land, Mr. Willet utilized the market data approach, and this estimate of value was predicated on three comparable sales with necessary adjustments. In discussing the comparable sales as used by Mr. Willet, the record reads as follows:
“Q. What comparable sales did you find that you felt would be comparable to the subject property and which one did you choose as the most influencing comparable ?
A. Well, one sale — you see, this was the situation as I explained awhile ago, where you don't just simply have a rectangular piece of property sitting up fronting on the road, it kind of has more of a lane type access to it, so I was able to find just up to the north on Pumpkin Center Road then a little lane that led off to the east which would put it on the opposite side of Pumpkin Center Road from the subject property but on up north just a little ways, less than quarter of a mile. This was a sale dated July 2, 1963, as recorded in Conveyance Book 272, Page 231, where the vendor was Calvin Shaffer and the vendee Bobby Hano. This is a sale between brothers-in-law but in talking to the parties they advised me this was a sale * * *
(emphasis added)

“A. That’s on the east side of the road— this is north up at the top, yes, sir. And it was from this owner of parcel 13-7, Calvin H. Shaffer, that two acquisitions were made by Bobby Hano. The first was of an acre at $250.00 an acre back earlier and this is a subsequent acquisition —the one that I’m using — I have the data on the older one but I used the more recent one, of 1.53 acres that sold for $750.00, or $490.00 per acre. The advantage, as I saw it, in having an indication from this conveyance was the fact that it had the similar lane type access that was available for the subject property in behind another house. Now, a second sale, while we are on this same page here, is an earlier sale of parcel 13-19 which is across on the opposite side of Pumpkin Center Road from subject and on up north some probably 1000 feet. This was the sale of a vacant tract of land recorded in Conveyance Book 260, Page 260 dated March 15,1962 and it’s a sale from Cloyde Shaffer, Sr. to Amos Leo Stewart. This has frontage directly on Pumpkin Center *883 Road of 138 feet and it is simply a rectangular shaped tract of land with a total area of 3.641 acres. Now this is a parcel 13-19 indicated on the map that I have before me. This sold for $1500.00 which computes $412.00 per acre but it was back in 1962. This didn’t have the lane type characteristic that subject property had but it is in close proximity to the subject land. The third sale that I was able to find is also at the end of a lane on west of this Pumpkin Center Road- — a lane that extended off of this blacktop Highway 1040. This was a sale of a five acre tract from Richard E. Bankston to L. E. Connolly. This transaction is dated November 9, 1962, it’s recorded in Conveyance Book 101 Page 20 of the records of Livingston Parish. This sold for $1500.00 and was five acres described as the south one-half of Lot 3 in Section 39-6-6. This has a 30 foot wide lane that extends back to this five acres to this sold for $300.00 an acre. The main adjustment that was required was the adjustment for time since the date as of which value estimate is to be expressed now, as I understand it, is January 29, 1965, so my conclusion was an indication of $600.00 per acre for the subject property after all adjustments, (emphasis added)
Q. And how much did you value the whole property at?
A. $649.00 which is 1.081 acres at $600.00 an acre.”
Mr. Willet placed a value of $415.00 on the property that was taken, inasmuch 0.691 of an acre was taken.
As to the residence taken, Mr. Willet estimated the house proper, utility room, storeroom, carport and screened porch to have an equivalent of house proper area of 925 sq. ft. This is best explained by Mr. Willet’s testimony as follows:
“Q. Now, how much value did you estimate the house to be worth ?
A. The house alone I had $4558.00. I arrived at that this way, if you like. I took the house proper area plus the utility room and the storeroom and added those three areas together, and that totaled 784 sq. ft. Now this 160 sq. feet, of porch or carport, whichever you want to call it, had 184 sq. ft. in it. Now I felt that this was the equivalent of about— that about three feet of this is equivalent to about one foot of the house so to translate this into the equivalent of house proper area, I took 1/3 of this 184 sq. ft. of the carport, which is 61 sq. ft., and the screened porch, I took half of that 160 sq. ft., which was 80 sq. ft. That would give me an equivalent of house proper area of 925 sq. ft. I used a reproduction cost estimate of $6.75 per sq. ft. Now that’s giving full weight to the store room and the utility room just like it was house proper area and extending that 925 sq. ft. times $6.75 a sq. ft., it comes out $6,244.00 which would be the reproduction cost new estimate and then I deducted estimated depreciation, that’s physical and functional, of 27]%, or $1686.00. This left an indicated depreciated value of the house of $4558.00. There were 150 lineal feet of gravel drive which I estimated at $75.00 and then the well system including the motor, $140.00, so then these three items — the house at $4558.00, the gravel drive at $75.00, and the well system at $140.00 — totals $4773.00.”
The Department also called Mr. Edward D'eano who was accepted by the defendant as an expert in the field of real estate appraisals. As to this appraisal of the land value, Mr. Deano testified as follows:
“A. There is a sale Amelia Bigner to Melvin Mathis, a ten acre parcel on Pumpkin Center Road, sold for $4200.00 with an old building thereon, estimated to have a salvage value of $300.00, indicating $3900.00 for the land, or $390.00 per acre. Considering this sale was made some three years prior to the appraisal, I adjusted upward the subject property and *884 estimated that this sale would indicate a value to the subject property of approximately $600.00 an acre. Another sale of 3.641 acres—
BY THE COURT: Wait just a minute. What date did you say that was ?
A. September of 1960.
* * * * *
“A. * * * There was a sale from Cloyde Shaffer to Amos Leo Stewart, COB 260 Page 260, March 1962, 3,641 acres sold for $1500.00 indicating $412.00 per acre. This was parcel 13-19 of the project. I estimated that would indicate a value to the subject property of approximately $600.00 per acre. There was a sale from Calvin Shaffer to Bobby Hano, COB 272, in July 1963, 1.53 acres off of Pumpkin Center Road serviced by a driveway similar to the subject property. This sale was for $750.00, or $490.-00 per acre, which I considered indicated a value to the subject property of $600.-00 per acre, which was my final conclusion.”
As to the appraised valuation of the improvements on the property, Mr. Deano concluded the replacement value to be $5707.00, less a 25% depreciation of $1427.-00, leaving a depreciated value at $4280.00. He valued the 150 foot gravel drive at $75.-00 and the well and pump at $125.00, thus making a total of $4480.00 for improvements. The total value of the property taken was estimated at $4895.00.
In estimating the value of the land taken, the appraisers included in their valuations landscaping, trees and shrubbery. Both appraisers concluded that the remainder had suffered no severance damage considering the fact that the remainder would have approximately a 260 foot frontage on the service road, and could still accommodate a residence. This is best illustrated by Mr. Deano’s testimony, to-wit:
“A. Before the taking the property consisted of approximately an acre of land having a frontage or access to Pumpkin Center Road approximately 20 feet that was used as a driveway to the interior part of the property. The parcel remaining would be triangular in shape having adequate size for residential use after the completion of the project. Whereas before the taking it had a 20 foot frontage, after the taking it will enjoy 264 foot front on a hard surfaced service road or frontal road and this remaining .39 acres could be utilized for residential use.”
The defendant called Robert Spec Mc-Clendon, who was qualified as an expert in real estate appraisals. He placed a total value before the taking at $8,653.44, which he described as follows:
“A. The total value before the acquisition $8653.44. The way I arrived at that, I took the square footage of the house, 1127 square feet, that includes the carport, the screened in porch, and all. That’s the outside dimensions of the whole. Using a replacement cost of $7.50 I adjusted it to $6.50 over-all to take care of the carport and the screened porch which gave a replacement value of $7325.50. Using a life expectancy of a dwelling of that type of 50 years, its present age of 8 years, I used a depreciation factor of 16%. Value of the house today at $6153.44.
******
“A. It’s roughly $1000.00 an acre, there’s such a little fraction there over, I think it’s Vioo of an acre over. I just rounded it off to $1000.00. There’s 1.067 acres total, I just rounded it off to $1000.00 for the tract of land. I would actually prefer to refer to it as a tract of land or homesite than an acre but there’s little difference. For the driveway, well, septic tank, butane system, dog house and other improvements I placed a value of $1500.00. Brings us back to the total of $8653.44 before the taking.
******
*885 “A. All of that is included, Your Honor. As I say, this is a rounded off figure that includes the plumbing to a degree. The remainder for the lane, roughly one-third or $333.00 value for the remainder, but because of its shape being a right angle triangle, you remember, the dimensions running so far out 212 feet on one side the points are of little value, it’s such a small pie-shaped piece and the greatest depth from the hypotenuse back to the angle of any part of it bearly approach 100 feet, and I estimated that from an actual survey and I feel that even though it constitutes .376 acres that the actual us'uable land in that area would be considerably less as to benefit of yard or playground or homesite. Therefore, I depreciated that, or rather used a severance damage of two-thirds approximately to take $233.00 off and leave the remainder valued at $100.00. So the total value was $333.00 with $233.00 severance damages, leaving the value of the remainder at $100.00, so $100.00 from the before the taking would leave damages of acquisition of the total taking would be $8553.44, and we round this whole figure off to $8500.00.”
Mr. McClendon testified that he appraised the property after the Department had acquired it.
The land owner has placed on him the burden of proving any greater valuation than that estimated by the Department. LSA-R.S. 48:453. In State, Through Dept. of Highways v. Rownd, La.App. 4th Cir., 119 So.2d 282, 288 (1960) the Court held: To the same effect see State, Through Dept. of Highways v. Richard, La.App., 135 So.2d 319 (1961) ; State, Through Dept, of Highways v. Kurtz, La.App., 143 So.2d 761 (1962); State, Through Dept. of Highways v. Vallon, La.App., 182 So.2d 705 (1966); and to the same effect as to severance damages, see State, Through Dept. of Highways v. Baddock, La.App., 170 So.2d 5 (1965).
“When the owner, who is the defendant in such a suit, claims that the value is in excess of the estimate, he, the defendant, as a result of LSA-R.S. 48:452, has the burden of proving his claim. He must produce convincing evidence that the value is in excess of that shown in the estimate on which the Department of Highways has made the deposit.”
We have stated above that the determination of value as to the property taken and as to severance damages is a factual issue, and we find no error in the conclusion as reached by the Trial Judge.
Therefore, for the above and foregoing reasons, the judgment is affirmed, all costs to be paid by defendant-appellant.
Judgment affirmed.