100 So.2d 461

Josephine KOERBER

v.

The CITY OF NEW ORLEANS.

No. 43727.

Feb. 10, 1958.

Alvin J. Liska, City Atty., Morey L. Sear, James W. Hopkins, New Orleans, for defendant-appellant.

Clem H. Sehrt, Edward J. Boyle, Dudley A. Philips, Jr., Ponder & Ponder, New Orleans, for plaintiff-appellee.

HAMITER, Justice.

On this appeal the defendant, City of New Orleans, seeks to have reduced to $1,240 a judgment for $15,000 granted to plaintiff, Josephine Koerber, such amount having been found by the trial court to be the value of her tract of land (containing 4.584 acres) that was taken for, and used in, the construction of Moisant International Airport located near the City of Kenner in Jefferson Parish.

When this cause was previously before this court we concluded that the plaintiff owned the land; that the defendant had the right to expropriate it for airport purposes; and that the date of the city's demand for expropriation, September 27, 1951, should govern in determining the value of the property taken. After so concluding we remanded the case for the purpose of establishing value as of that date. See Koerber v. City of New Orleans, 228 La. 903, 84 So.2d 454.

Announced in City of Shreveport v. Abe Meyer Corporation, 219 La. 128, 52 So.2d 445, 447, is the test for determining the value of property taken under the power of eminent domain. Therein we said:

"* * * the rule is well settled in condemnation cases that the most

profitable use to which the land can be put, by reason of its location, topography and adaptability, will be considered as bearing upon its market value. * * *

* * * * * *

"* * * Article 2633 of the Civil Code, in speaking of true value, contemplates, of course, that the criterion to be used in expropriation proceedings in arriving at the basis for assessment is market value—that is, the price which would be agreed upon at a voluntary sale between a willing seller and purchaser, taking into consideration all of the available uses of the land. * * *"

And in Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6, 8, we observed: "Whilst the fact that a piece of property may, at some time, become available for residential subdivision purposes, can be taken into consideration in fixing its market value in expropriation proceedings, it should be made to appear that there is some reasonable expectation that it might be so developed in the not too far distant future. * * *"

Therefore in the instant cause we must examine the evidence adduced with the view of determining with reasonable certainty the most profitable use to which the land in question could have been put in the latter part of 1951, and also the

price for such property that most probably would have been agreed upon by a willing buyer and a willing seller had a sale thereof been made at that time.

The record before us clearly discloses that the highest and most profitable use to which plaintiff's tract could have been put at the mentioned time was for residential subdivision purposes (it commenced some 2,600 feet from the heavily travelled Air Line Highway which runs through the City of Kenner). Even as early as 1940 land in the vicinity was being so developed; and by 1951 the greater part of the area immediately surrounding the airport (containing the instant tract) had become subdivisions in which innumerable lot and plot sales were being made for the building of homes. Thus, undoubtedly, plaintiff's land would have developed like the nearby property had not the defendant city taken it for the construction of the airport.

For proving the specific value of her land plaintiff called, as an expert witness, Mr. J. Folse Roy. He had dealt and specialized in the development and sale of real estate in the vicinity of the airport for some twenty years. In his opinion plaintiff's tract as of 1951 had a value of $3,250 per acre, he particularly noting that long prior to the city's acquisition the property had been publicly platted as a subdivision and lay along a dedicated street—thus eliminating the necessity of using any of it for street purposes. Basing his appraisal on the possible sale of the property in lots or small plots for home construction, and supporting it by citing actual sales made over a period of years in the established subdivisions surrounding the airport, he first showed that as early as 1940 land was selling in the area for from $900 to $1,750 per acre. Continuing to use comparables in such subdivisions he then demonstrated how the prices had increased yearly and that in 1951 lots having a frontage of 20 feet were selling for as high as $275 to $300 each, there being 18 of these lots to the acre. Numerous such specific sales were mentioned, some of the lots sold having been located farther from the Air Line Highway than the Koerber property. Moreover, most of the sales referred to involved unimproved land that was much less desirable than plaintiff's tract which was situated on a relatively high ridge and hence better drained. And in most instances the lots had been sold according to the subdivision plats without the streets having yet been laid.

Since plaintiff's tract bordered on a dedicated street Mr. Roy also computed the value thereof according to its usable front footage (1,200 feet). After considering sales of comparable lots at $13 per front foot he arrived at a value for the property that was very close to his total appraisal made on an acreage basis.

Defendant's expert, Mr. E. Holland Johnson, estimated plaintiff's entire tract

to be worth only $1,240. In arriving at this figure he valued the property at $300 per acre and then depreciated the total valuation 10% because of the tract's triangular shape. However, his testimony clearly shows that he gave no consideration whatever to the property's value for residential subdivision purposes—the most profitable use to which the land could have been put. Thus, he testified:

"Q. What did you consider to be the best use of this property other than for the airport? A. The highest and best use of the property as it was, it would offer very little, the agricultural part use, which was practically nill. If they held it for a number of years there would be some trees that they could probably market for pulp wood. * * * as it was it had just a speculative value."

Mr. Johnson did cite a few actual sales as the basis of his appraisal, most of which were made by him in connection with the liquidation of the estate of William Mason Smith. He testified that in one square in the area he had sold nine lots for only $50 per lot; however, Mr. Roy, in rebuttal, showed that in an adjoining square, closer to the Koerber property, he had in 1951 sold five lots for $275 and $300 each. Another sale handled by Mr. Johnson for the Smith estate was of a 300 acre tract at $300 per acre made in 1950 to three individuals. But in 1951 one of those purchasers bought from Mr. Roy, according to his testimony, 64 lots that practically adjoined the 300 acres for $200 per lot.

Some of the sales also referred to by Mr. Johnson, but not made by him, were of lots in the Kenner project. However, as testified to by Mr. Roy, they were sold subject to recorded air rights because of which no permits for building thereon could be obtained from the City of Kenner. Furthermore, as stated by Mr. Roy and not contradicted by Mr. Johnson, still other sales relied on by the latter concerned property in a low swampy area which required considerable fill before it could be developed.

In view of the circumstances pointed out above we are forced to conclude that Mr. Johnson's testimony, together with his appraisal of only $1,240 for the entire tract, is not well grounded. And it follows that we cannot give any effect to it in determining the true value of the property. See Domino v. Domino, 233 La. 1014, 99 So.2d 328.

On the other hand the testimony of Mr. Roy indicates his complete familiarity with the development and conditions of this particular area over a number of years. And the actual sales of comparable property referred to by him, particularly those made during the middle and latter part of 1951, amply support his appraisal of $3,250 per acre.

The trial judge fixed the value of the entire property at $15,000, he apparently using Mr. Roy's per acre appraisal (we think this was warranted) but arriving at a round figure. However, the tract here contains specifically 4.584 acres which, at $3,250 per acre, would make its correct total value $14,898. The judgment should be amended accordingly.

For the reasons assigned the judgment appealed from is amended by reducing the award in favor of plaintiff from $15,000 to $14,898; and, as thus amended, it is affirmed.

PONDER, J., recused.

SIMON, J., absent.