JONES, Judge.
Plaintiff, The State of Louisiana Through the Department of Highways, finding it necessary to widen State Route No. 1, known as the Port Allen-Plaquemine Highway, between the towns of Plaque-mine and Port Allen, filed a petition expropriating a certain lot belonging to the defendant along said highway on the outskirts of Plaquemine, Louisiana. According to the description in the deed, this lot had a frontage of 133.71 feet on said highway. The suit was instituted under the authority of Section 19.1 of Article VI of the Constitution of Louisiana of 1921, LSA, and the provisions of LSA-R.S. 48:441-460. The petition was filed on March 15, 1960 and in connection therewith the plaintiff deposited $33,823 which its appraiser, Mr. Kermit Williams, found to be the value of the property. Defendant filed answer claiming that the deposit in the registry of the court was inadequate compensation and that she should receive $65,000 for the land and improvements thereon. The case was tried in May of 1960 and in July of the same year the District Judge rendered judgment awarding to the defendant owner $50,000 as the value of the property taken. From this judgment the plaintiff has appealed, specifying as errors:
*904 1. It was error on the part of the trial judge to fix the market value for the expropriated property at $50,000 apparently «upon testimony that property involved in a sale to the expropriating authority was for a consideration of $54,149 when such sale was not one which could be treated as a comparable sale, and was one in which the witness using it clearly failed to understand the amount of improvements included in it.
2. The trial court erred in failing to hold that defendant had not borne the burden of proving the value of the expropriated property to be in excess of the amount of money deposited by the state and proven to be its highest possible market value.
The property subject of this expropriation is the western portion of Lot Six of the subdivision of Lots Six and Seven of the Homestead Plantation. It is on the eastern side of Louisiana Route No. 1 immediately outside the town of Plaquemine and has a western frontage of 133.71 feet. Its depth on the north side is 185.67 feet, its width on the east is 64.67 feet, and its depth on the south is 115.0 feet. Located on the property is a one story combination brick grocery store and residence as well as a garage and storage room. The land including the improvements thereon as well as merchandise and fixtures was purchased by the defendant in 1955 for $28,000 and the evidence further reflects that the improvements on the property were constructed in 1953 by the previous owner for $17,850.
At the trial, defendant produced two builders or contractors who had had many years experience in the building and contracting business. Mr. Poirrier, in testifying in connection with the replacement value of the improvements on the property, found that the combination store and residence and garage consisted of 3,075 square feet and it was his opinion that at the present time it would cost $14 per square foot to replace said buildings. He thus fixed the replacement value at $43,-500. His testimony shows that he had not allowed for depreciation of the buildings which were seven and one-half years old and it further shows that he did not understand the method of calculating depreciation. However, he did ultimately testify that, from his observation of the condition of the buildings, $2,000 should be allowed for depreciation, making his net replacement value of the buildings $41,500. Mr. Gus Guinchard found that the buildings measured 3,100 square feet and further testified it would cost $14 per square foot to replace the buildings. He allowed $1,800 for depreciation but did not give a satisfactory explanation of his conclusion. He found the cost of replacement for the buildings to be $41,870.
The plaintiff produced two witnesses as to the cost of the replacement of the buildings on the property, viz., Mr. Kermit Williams and Mr. William J. Fort, both of whom appraised the property for the plaintiff in connection with the expropriation petition. Mr. Williams found that the combination grocery and residence on the property consisted of 2,247 square feet, that the garage consisted of 500 square feet and the open porch consisted of -128 square feet, making a total of 2,875 square feet. He testified that the replacement of the store and residence building was $12 per square foot and the replacement of the garage was $5 per square foot and the open porch was $5 per square foot. Thus, he reached a total value, before depreciation, of the buildings on the property of $30,104. He depreciated the buildings at two per cent per year and since they were seven and one-half years of age, with what he considered a fifty year economic life, his depreciation was shown to be fifteen per cent. Thus, since he found that the buildings depreciated in value in the seven and one-half years in the amount of $4515.60, he thus found the net value of the buildings to be $25,588 at the time of the expropriation. Mr. Williams is not a building contractor but a realtor and appraiser. He bases his *905 cost of $12 per square foot to replace the buildings on his experience in having built two houses in Baton Rouge some two years prior to the date of the trial. He testified that he actually built the houses for $10 per square foot but expected to sell them for at least $12 per square foot. Mr. Fort, plaintiff’s other appraiser, fixed the replacement value of the buildings at $11 per square foot but he didn’t find the same number of square feet in the buildings as did Mr. Williams. We might further add that from the testimony in the record it appears that the garage on the property was built out of solid brick and there was also a solid brick wall in the store area of the combination residence-store building. We are further impressed by the testimony of Mr. Ivy L. Alford, Sr., the contractor who constructed the buildings on the property, that the best construction methods were used. Additionally, Mr. Williams’ testimony does not show that the houses that he built were of the same construction as the improvements on the subject property.
From the above résumé of the testimony of the witnesses as to the value of the improvements, it is shown that Mr. Williams testified that the combination residence and store could be replaced for $12 per square foot while the state’s other appraiser, Mr. Fort, testified that it could be replaced for $11 per square foot. Both of them stated the garage and porch could be replaced for $5 per square foot. On the other hand, the witnesses for the defendant, Mr. Poirrier and Mr. Guinchard, testified that it would cost $14 per square foot to replace all of the buildings. One of them found the square footage in all of the buildings to be 3,075 square feet and the other found it to be 3,100 square feet. On the other hand, Mr. Williams found the square feet of both of the buildings, including the porch, to be 2,875, while Mr. Fort found it to be 2,868. Thus, there is a discrepancy in the number of square feet among all the witnesses and, in view of this evidence, we believe it is equitable to hold that the two buildings contained 3;000 square feet. Even though Mr. Poirrier and Mr. Guinchard had long and varied experience in the building business, we are of the opinion that their estimate of $14 per square foot for all-of the buildings was much too high. We say this for the reason that we do not believe that it would cost anywhere near $14 per square foot, particularly to replace the garage and the open porch as well as that part of the building including the store, because it was just one room. Of course, the other part of the building which contained the residence and had five rooms would no doubt cost more for that type of construction per square foot. After due consideration of all of the testimony as to the replacement value per square foot, as above analyzed, we are of the opinion that an allowance of $12.50 therefor is just. Accordingly, since there were 3,000 square feet in both buildings on the property, then the actual cost of replacement would be $37,500. From this must be deducted the depreciated value of the property and we consider the depreciation as calculated by plaintiff’s appraiser, Mr. Williams, to be accurate. He pointed out that the buildings on the subject property were seven and one-half years old and he estimated a fifty year economic life. This would accordingly result in a two per cent depreciation a year or fifteen per cent for the seven and one-half year period. Thus, subtracting the depreciation of $5,-625 from the actual cost of replacement, $37,500 leaves a replacement value of $31,-875 for the improvements on the property. In addition to this $415 was estimated as the value of four pecan trees and the shrubbery, making a total of $32,290 which is the amount the defendant is entitled to for the improvements on the property.
The lot on which the improvements were located was purchased by defendant’s vendor in the year 1952 for a consideration of $6,000. A sale from Miller to Standard Oil Company in the year 1957 was considered by plaintiff as a comparable in reaching the value as to the land alone. The testimony of the appraiser, Mr. Williams, as well as Mr. Fort, was that they *906 used this sale for reaching the value of the subject land expropriated as well as other properties expropriated in the immediate vicinity. They figured the Miller sale to be $80 per front foot and also figured its value on a square foot basis. They gave this same $80 per front foot value to the subject property as well as to other expropriated property making allowances for difference in depth of the respective properties. Mr. Williams arrived at a value of $7,820 for the defendant’s land. Mr. Fort found that the land value, using the same method employed by Mr. Williams, was $7,020. The state, as is its practice, allowed the higher value placed on the land by Mr. Williams.
Mr. J. O. Hebert, who had been in the real estate business in Iberville Parish since 1926, valued defendant’s land at $18,-000 to $20,000. It is shown that he appraised this property in 1959 for the defendant and he used as comparables several pieces of property that had been sold by owners in the immediate vicinity to the Highway Department, in order that said road might be built. There was objection to these sales of property to the expropriating authority but they were admitted into evidence. The ruling was correct. While a sale to a condemning authority under the threat of expropriation is not a “willing seller” transaction and is therefore not controlling as a comparable sale (Parish of East Baton Rouge v. Edwards, La.App., 119 So.2d 175), yet it is entitled to consideration in reaching a conclusion as to the market value of the property. Orleans Parish School Board v. Paternostro, 236 La. 223, 107 So.2d 451. Further, all evidence offered in behalf of the parties in an expropriation case is required to be carefully scrutinized and evaluated. State Through Department of Highways v. Cook, La.App. 2 Cir., 124 So.2d 221, writs denied by the Supreme Court. Also Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541.
Considering the other sales of property in the immediate vicinity to the expropriating authority together with the testimony of Mr. Hebert in comparing them with the subject property, we are of the opinion that the subject land is worth far less than the value placed on it by Mr. Hebert. As a matter of fact, in the six sales to the expropriating authority, both Mr. Williams and Mr. Fort explained in detail how they reached the value of each piece of property. They applied the same system of fixing the value of $80 per front foot and, in addition, estimated the value of the square footage of each piece of property just as they did in connection with the subject land. It seems that the District Judge, in fixing the value of both the land and improvements at $50,000, relied to a great extent on the testimony of Mr. Hebert as well as his appraisal and he particularly referred in his reasons for judgment to the Gagliano sale, which was for some $54,-000 and about which Mr. Hebert testified at length. It is true that the Gagliano property is about 1,000 feet from the subject property but the evidence shows that it is much larger in measurement, being more than one-third larger. Thus, the value of the Gagliano land was found by Mr. Williams to be $11,100 and by Mr. Fort $11,-400. We might further add that the two buildings on the Gagliano property were worth somewhat more, consisting of a concrete store and a six room home, than the combination store and residence of the defendant. In addition to Mr. Hebert, Mr. Forbes, who had been in the real estate business in Plaquemine for a number of years, also testified. While these gentlemen sought to put a value on each of the pieces of property that had been previously sold to the expropriating authority that were in the immediate vicinity to the subject property, the evidence reflects that they did not examine the descriptions in the titles of the respective owners in order to determine the size of each of the pieces of property. Thus, we do not consider their testimony to be as valuable in reaching a conclusion as to the value of the land as we do the experts of plaintiff who used the sale *907 of 1957 from Miller to the Standard Oil Company as a comparable. This sale showed that Miller received $80 per front foot for his property. There is no question but that the recent sale of similar property is the best criterion of market value in expropriation suits. Mississippi River Bridge Authority v. Curry, 232 La. 140, 94 So.2d 9, and it is true that the market value in an expropriation case is the price agreed upon at a voluntary sale between a willing seller and purchaser. Koerber v. City of New Orleans, 234 La. 433, 100 So.2d 461. The Miller to Standard Oil sale was made in 1957, which was the year after the Dow Chemical Company established its plant in Iberville Parish and the establishment of which the District Judge regarded as vastly increasing the prices of property in the area. The Miller sale, of course, is far more valuable as a comparable than are the other sales in the immediate vicinity to the expropriating authority. However, we note that the subject property was a corner lot, which was not true of the Gagli-ano property as it was in the middle of the block. The subject property was being used for commercial purposes, its highest use, and we believe that the fact it was a corner lot made it more valuable per square foot than the Gagliano property which was being used for the same purpose. Accordingly, considering this feature together with the estimates of all the experts as to the value of the land, we are of the opinion that an evaluation of $8,600 for the expropriated land is correct. Having allowed $31,875 as the value of the improvements on the property and adding the value of the land thereto gives a total of $40,475 which we determine to be the value of defendant’s property that has been expropriated by the plaintiff.
While we have primarily determined the value of the improvements on the subject property by a consideration of the replacement value placed thereon by the experts, we have further considered the testimony of defendant’s appraiser, Mr. Hebert, as to the whole property being worth the amount paid for the Gagliano property, or $54,000. Since Mr. Hebert placed a valuation of $18,000 on the land, then he had to reach the conclusion that the improvements thereon were worth $36,000. Of course, the improvements on the subject property consisting of the combination store and residence together with the garage were not nearly so valuable as the improvements on the Gagliano property consisting of a brick residence of six rooms and a separate concrete block store together with a wash house. We consider that while the Gagliano property is not truly a comparable property it is nearer to being a comparable than any of the other expropriated property. We are satisfied that the improvements on the Gagliano property were worth ten or eleven thousand dollars more than the improvements on the subject property and since the Gagliano land was some $3,000 more valuable than the subject property then we have reached the conclusion that the subject property together with the improvements thereon is some $14,000 less in value than the Gagliano property.
Accordingly, the judgment of the District Court will be amended by reducing the amount of the award from $50,000 to $40,475. The defendant is entitled to interest at five per cent per annum from date of judicial demand, March 15, 1960, until paid on $6,652 which represents the difference between the amount deposited in payment of the property and the amount awarded by this court.
The judgment of the District Court is amended as herein outlined and in all other respects it is affirmed.
Amended and affirmed.