SARTAIN, Judge.
This is an expropriation proceeding wherein plaintiff seeks to obtain 2.926 acres of a 7.738 acre tract of land from the defendant-landowner. Edwin M. Beatty, Jr., for the construction of a highway interchange at the junction of U. S. Highway 190 (Highway 190) and Interstate Highway 12 (1-12) in St. Tammany Parish.
Plaintiff deposited in the registry of the court a total of $39,148.00 as just compensation for the value of the land taken. The trial court rendered judgment for the defendant-landowner awarding $63,728.00 as just compensation for the land taken and $38,364.00 as severance damages. From that adverse judgment plaintiff brings this devolutive appeal.
The subject property is located on the east side of Highway 190 in St. Tammany Parish just south of the proposed interchange at the junction of Highway 190 and 1-12 and between this interchange and Chinchuba, Louisiana. At Chinchuba Highway 190, Louisiana Highway 22, and the North Ponchartrain Causeway Approach intersect. The property was being used for a residence at the time of the taking on June 22, 1971. The only improvements on the part taken were a shell driveway, brick entrance columns and ornamental wire fencing. The improvements on the remainder are an old residence, a newer residence, a barn, a water well and other structures.
Before the taking the parent tract fronted directly on Highway 190 and had free and unrestricted access to the highway. The taking will result in the construction of a controlled access highway along Highway 190 in front of the Beatty remainder. The remainder will front on a service or frontage road which will be fenced off from the four-laned Highway 190. This service road will dead end at the Ponchito-lawa Subdivision just north of the Beatty remainder and in order to reach Highway 190 from the Beatty remainder it will be necessary to drive .south on the service road a distance of three-quarters of a mile to the interchange to be constructed at the junction of Highway 190 and Fairway Drive. '
After construction of the controlled access highway, the driver of a vehicle proceeding south on Highway 190 and desiring to reach the Beatty remainder must drive three-quarters of a mile further south after passing the property to the Fairway Drive interchange and then enter the service road and proceed north for three-quarters of a mile to the Beatty remainder. The driver of a vehicle going north on Highway 190 who sees the Beatty property and desires to drive to it must proceed north to the interchange at 1-12 and Highway 190, turn around, proceed south to the Fairway Drive interchange and then enter the service road and drive north another three-quarters of a mile to the Beatty remainder. A driver proceeding north on Highway 190 knowing where the Beatty property is located and desiring to drive to it would enter the service road at the Fairway Drive interchange and proceed north three-quarters of a mile to the property without any substantial loss of time or distance.
At trial of this case plaintiff called as expert real estate appraisers Edward J. Deano, Jr. and Henry B. Breeding, Jr. Testifying as expert appraisers for the defendant landowner were Frank J. Patecek and John Lejeune. Also called by defendant was Gerald Fussell, an expert civil engineer and surveyor. Each expert used the market data, comparable sales approach to determine the value of the land taken. It *902 was agreed by all of the experts that the highest and best use of the land taken was highway commercial or potential highway commercial at the time of the taking. The following chart shows a comparison of the findings by the appraisers and by the trial court of the value of the part taken and severance damages:
COMPENSATION FOR PART TAKEN AND SEVERANCE
Compensation for Part Taken
Deano Breeding Patecek Lejeune Trial Court
Land $38,038.00 $35,112.00 $63,728.00 $63,728.00 $63,728.00
Improvements ■ 1,110.00 1,084.00 _0
Total $39,148.00 $36,196.00 $63,728.00 $63,728.00 $63,728.00
Severance 0 $39,363.75 $33,364.00 $38,364.00
Total Just
Compensation $39,148.00 $36,196.00 $103,092.00 $97,092.00 $102,092.00
Plaintiff asserts that the trial court erred in awarding $63,728.00 as just compensation for the part taken and in concluding that the owner was entitled to the market value of the property as enhanced by a previously announced improvement. In addition plaintiff contends that the trial court erred in awarding severance damages to the landowner and in considering as elements of severance damages the inconvenience to the landowner and the diversion of traffic caused by the taking.
VALUE OF THE PART TAKEN
It is well settled that in an expropriation proceeding the landowner is entitled to compensation equivalent to the market value of the property taken and it has been stated that the best evidence of the market value is sales of similar properties commonly referred to as comparables. State, Through Department of Highways v. Kennedy, 193 So.2d 848 (1st La.App. 1966), writ refused 250 La. 273, 195 So.2d 149 (1967). All of the expert real estate appraisers in the instant case used this method to determine the before value of the Beatty parent tract.
Defendant’s appraisers, Patecek and Lejeune, used the same four comparables to determine the before value of the Beatty parent tract. The comparables they used were (1) a 1968 sale from Boudousquie to Covington Interstate, Inc., (2) two sales dated June 1, 1968, one being a sale from Engineering Enterprises to George Wax and the other a sale from Alvin L. Landry to George Wax, the two sales resulting in the assembling by Wax of one contiguous parcel of land, (3) a 1968 sale from Freeman to delaHoussaye, and (4) a 1969 sale from Ken Kyte to Colby. Defendan’s appraisers expressed their values on a per square foot basis and neither Patecek nor Lejeune assigned any value to the improvements because the residential improvements did not contribute to the value of the commercial land.
The first comparable was a sale from Boudousquie to Covington Interstate, Inc. on January 15, 1968 of 10.105 acres at $100,000.00 or $9,765.625 per acre. This property is similar in size to the subject property and is immediately adjacent to the Beatty property on the north. Using slightly different adjustments for location, size, elevation and time, Patecek concluded that this comparable indicated a before value for the Beatty tract of 52.08 cents per square foot, while Lejeune concluded that this comparable indicated a value for the Beatty tract of 57.7 cents per square foot.
Comparable number two consisted of two sales to George Wax on June 1, 1968. The *903 sale from Alvin L. Landry to Wax was for a middle piece of land for $45,000.00. The sale from Engineering Enterprises, Inc. to George Wax was for two tracts, one on each side of the Landry tract, for $100,000.00. These two sales resulted in the assembling of one contiguous tract located on the west side of Highway 190 just north of the Highway 190 and 1-12 interchange. The comparable consists of a total of 9.208 acres and was purchased for a total price of $145,000.00. Both appraisers utilized similar adjustments and determined that this comparable indicated a value for the Beatty tract of 49.1 cents per square foot.
Comparable number three was a sale dated July 31, 1968 from Freeman to delaHoussaye of a tract of land located on the west side of Highway 190 about one mile south of the Beatty property. The comparable consists of 4.676 acres and was purchased by delaHoussaye for a price of $116,000.00. Using different adjustments for size, shape and depth ratio, Patecek concluded that the delaHoussaye sale indicated a value for the Beatty tract of 62.4 cents per square foot, whereas Lejeune concluded that this comparable indicated a value for the Beatty property of 57.9 cents per square foot. Both appraisers made adjustments for this comparable because it had public sewerage and water while the subject property did not.
Comparable number four was a sale from Ken Kyte to Colby dated March 1, 1969 of a 4.2 acre tract located on the west side of Highway 190 some 1200 feet north of the end of the control of access of the modified cloverleaf interchange at 1-12 and Highway 190. This property sold for $55,000.00. Both Patecek and Lejeune adjusted upward in comparing this property to the Beatty tract because the Beatty property had approximately twice as much frontage on Highway 190 as did the comparable. Patecek concluded that this comparable indicated a value of 48.55 cents per square foot for the Beatty tract. Lejeune concluded that a value of 49.0 cents per square foot was indicated for the Beatty property by this comparable.
Based upon the above four comparables both Lejeune and Patecek assigned a before value to the Beatty tract of 50 cents per square foot. Thus, both appraisers assigned as the value of the part taken the total sum of $63,728.00.
To determine the before value of the Beatty tract plaintiff’s appraisers, Deano and Breeding, both used a 1967 sale from Delta Security Bank to Twenty Two Investors, and the 1969 sale from Kyte to Colby. As his third comparable Breeding used the 1968 sale from Engineering Enterprises to Wax. Deano used the 1968 sale from Freeman to delaHoussaye as his third comparable. Both Deano and Breeding expressed their valuations on a per acre basis.
The first comparable was a sale from Delta Security Bank to Twenty Two Investors in December of 1967 of a 22 acre tract of land some two and one-half miles south of the subject property. Deano concluded that this comparable indicated a value of $10,500.00 per acre for the subject property. Breeding concluded that a value of $11,500.00 per acre for the Beatty tract was indicated by this comparable. Both Deano and Breeding assumed in their analysis of this comparable that the sale price was $200,000.00. However, the sale price was shown at trial to have actually been $220,000.00. Neither Patecek nor Lejeune used this sale as a comparable and both Breeding and Deano admitted it was not the best comparable.
Both Breeding and Deano used the Kyte to Colby sale as a comparable. This sale was also used by Patecek and Lejeune. Deano found an indicated value for the Beatty tract of $13,500.00 per acre based on this comparable. Breeding concluded that this comparable indicated a value for the Beatty tract of $12,095.00 per acre. In his testimony at trial Breeding admitted that he had made an error in not increasing Beatty’s value as compared to this *904 comparable due to the better frontage to depth ratio of the Beatty tract. The main difference between the conclusions drawn by plaintiff’s appraisers in connection with this comparable and those of defendant’s appraisers is the time adjustment of twelve per cent per year used by Patecek and Le-jeune to adjust for price increases between the date of this comparable sale and the date of the taking, which adjustment was not utilized by plaintiff’s appraisers.
Breeding used as his third comparable the 1968 sale from Engineering Enterprises to George Wax. He concluded that this sale indicated a value of $12,390.00 per acre for the Beatty tract. However, as pointed out by the trial court, Breeding used only one of the two sales to Wax on that same day which resulted in his assembling one contiguous tract of land.
The third comparable used by Deano was the sale from Freeman to dela-Houssaye. This comparable was also used by Patecek and Lejeune. Deano concluded that this comparable indicated a value of $13,000.00 per acre for the Beatty tract. The main differences between Deano’s adjustments and those made by defendant’s appraisers in analyzing this comparable were Deano’s downward adjustment for utilities, his downward adjustment for accessibility and his failure to take into account any time adjustment for price increases.
Based on these comparables Deano concluded that the before value of the Beatty tract was $13,000.00 per acre or 30 cents per square foot and that the value of the part taken totaled $39,148.00. Breeding concluded that the before value of the Beatty tract was $12,000.00 per acre or 28 cents per square foot and that the value of the part taken totaled $36,196.00. Both Deano and Breeding concluded that prices were not increasing from the date of their first comparable in 1967 to the date of the taking in June of 1971 and they did not adjust their appraisals to reflect any price increases as did defendant’s appraisers.
The trial court found that prices were rising during the period between the dates of the comparables and the date of the taking. The judge a quo held that the adjustment of twelve per cent annually used by Patecek and Lejeune to adjust for price increases was proper. The trial court also accepted the before value of 50 cents per square foot placed upon the Beatty property by defendant’s appraisers.
Plaintiff contends that the trial court erred in accepting the value placed upon the property by Patecek and Lejeune and in accepting the twelve per cent adjustment for price increases used by them in appraising the property.
Concerning the twelve per cent annual adjustment for price increases we note, as did the judge a quo, that defendant’s appraisers based this twelve per cent increase upon some six sales and resales of the same properties in the vicinity of the Beatty property. These six comparables were sold and resold for average price increases from 11.76% per year to as much as 104% per year. Deano referred to only one specific comparable which he claimed to evidence that prices were not increasing in the area. Breeding could not point to any specific sales or resales that showed no price increases but based his opinion that prices were not increasing on his general knowledge of the real estate market. In view of the substantially unrebutted evidence concerning price increases put forth by defendant’s experts, we find no error on the part of the trial court in accepting the twelve per cent annual time adjustment for price increases utilized by defendant’s experts in arriving at their appraisal of the market value of the property.
Nor do we find any manifest error in the acceptance by the judge a quo of the valuation of 50 cents per square foot placed upon the property by defendant’s experts. Our review of the various appraisals discloses that the comparables used by defendant’s experts and the adjustments made by Patecek and Lejeune are both *905 reasonable and sincere. Where the experts differ as to the valuation of property, the trial judge is in a better position to determine their credibility and the weight to be accorded their testimony and his decision should not be disturbed on appeal unless shown to be manifestly erroneous. State, Through Department of Highways v. Kennedy, supra; State, Through Department of Highways v. Christ Baptist Church, 197 So.2d 83 (1st La.App.1967). In the light of all the evidence, we can find no manifest error in the trial court’s acceptance of the valuation placed upon the property by defendant’s experts.
Plaintiff also contends that the trial court erred in accepting the valuation of the property advanced by defendant’s appraisers as enhanced by the improvement.
This issue arises out of the fact that the design for the interchange at Highway 190 and 1-12 was changed from an original diamond design to the modified cloverleaf design that was finally adopted. By stipulation of counsel, the testimony of Mr. Frank Heroy, Jr., interstate engineer for the Highway Department, taken in another proceeding involving this same interchange was admitted in evidence in this case. Mr. Heroy stated that in about 1965 the Highway Department first adopted a “diamond design” interchange for the intersection of Highway 190 and 1-12. At that time certain parcels of land were expropriated for this interchange. However, in November of 1968 when the construction of a controlled access highway on Highway 190 from 1-12 to Chinchuba, Louisiana was adopted, the interchange was changed to a modified cloverleaf design. According to Mr. Heroy this modified cloverleaf design was not foreseeable at the time the diamond design was first announced and only came about as part of the subsequent program for controlling access on Highway 190 which was a separate project from the original 1-12 project.
The Beatty tract was about 1600 feet south of the end of the control of access under the original diamond design. The expropriation in the instant case was made to accommodate the modified cloverleaf design interchange adopted as part of the controlled access system for Highway 190.
Thus, the issue presented is whether the proximity of the Beatty property to the end of the control of access under the original diamond design resulted in any increase in value of the parent tract and whether the defendant-landowner is entitled to that increase.
Mr. Patecek, one of defendant’s appraisers, concluded that being 1600 feet south of the end of the control of access under the original diamond design increased the value of the Beatty tract by 5 cents per square foot. He testified that his before value appraisal would be 45 cents per square foot instead of 50 cents per square foot if he could not take into consideration this enhanced value due to the prior diamond design. Mr. Lejeune, defendant’s other appraiser, testified that it was impossible to separate any increase in value due to the original diamond design and he appraised the property at 50 cents per square foot.
Plaintiff contends that the trial court erred in accepting the 50 cents per square foot valuation placed on the property on the grounds that this value represents the value of the property as enhanced by the improvement. In support of this contention plaintiff cites the case of State, Through Department of Highways v. Trippeer Realty Corporation, 276 So.2d 315 (La.Sup.Ct., 1973) wherein the court stated that the value of property expropriated should be fixed considering the property as of the time of the taking but not as enhanced by the purpose of the taking.
While the above stated principle may be the general rule, it is not without exception. It has been stated that where the expropriated property was not included within the scope of the project from the beginning, and the project was subsequently enlarged to include that additional property, *906 or if the subsequent expropriation was for a separate endeavor, then the landowner has been held entitled to receive compensation for his land at the enhanced value added to the property by reason of its proximity to the initial improvement. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943). This was precisely the result reached in the two cases cited by the trial court in written reasons for judgment in this case. State, Through Department of Highways v. Martin, 196 So.2d 63 (3rd La.App.1967), writ refused 250 La. 736, 199 So.2d 179 (1967); State Department of Highways v. Boles, 240 So.2d 786 (2nd La.App.1970).
The evidence in the instant case discloses that the original Interstate-12 project called for a “diamond design” interchange which would have resulted in the subject property being located in a favorable position near, the end of the interchange. According to the testimony of Mr. Heroy, at the time of the first taking for the diamond design interchange in 1965, it was not probable nor foreseeable that the design would be changed. The subsequent construction project for controlling access on Highway 190 was a separate and independent project from the original 1-12 project. It was this second project that resulted in the modification of the interchange and the taking of the subject property. Therefore, if the original diamond design increased the before value of the land, the landowner should be entitled to this increase.
Accordingly, we find no error in the trial court’s acceptance of Mr. Patecek’s valuation of the property at 50 cents per square foot even though this appraisal might contain an award for the enhanced value of the land due to the original project.
SEVERANCE DAMAGES
Plaintiff contends that the trial court erred in awarding severance damages and in considering as elements of severance damages, inconvenience to the landowner and diversion of traffic.
Our review of the record in regard to this issue convinces us of the correctness of the trial court’s award for severance damages and we therefore quote with approval that portion of the written reasons for judgment by the trial judge dealing with this issue as follows:
“Regarding severance damages, Patecek and Lejeune concluded that the highest and best use of the Beatty remainder land was reduced by the expropriation from highway commercial to residential. Both Patecek and Lejeune concluded that the residential improvements contributed to the value of the land remainder after the taking since the highest and best use of the land remainder became residential.
“Both Patecek and Lejeune concluded that the after value of the land remainder was 15^ a square foot, or $31,442.00 (Pate-cek used $31,441.61 rather than $31,442.00). Patecek valued the residential improvements on page 2 of his appraisal at $34,000.00, and adding this amount to his $31,441.61 after value of the land resulted in a total after value of $65,441.61 according to Patecek. Lejeune valued the residential improvements at $40,000.00, and adding this amount to his $31,442.00 after value for the land resulted in a total after value of $71,442.00.
“The following is a summary of these appraisers’ before and after values, and severance damages.
‘BEFORE AND AFTER VALUES AND SEVERANCE DAMAGES
Patecek Lejeune
Before Value $168,533.64 $168,534.00
After Value 65,441.61 71,442.00
Difference $103,092.03 $ 97,092.00
Less Part Taken 63,728.28 63,728.00
Severance Damages $ 39,363.75 $ 33,364.00
“For the after value of the land, Patecek and Lejeune relied on four sales in Tolawa Subdivision, a diagram of which appears at page 26 of the Patecek appraisal. This *907 subdivision is immediately behind and adjacent to the Beatty parent tract. These after value comparables range from about 7‡ per square foot to about 9‡ per square foot. Patecek and Lejeune concluded that the Beatty remainder was more valuable than these comparables, and they placed a value of 15^ a square foot on the Beatty Remainder.
“Patecek and Lejeune concluded that the denial of direct access of the Beatty remainder to the main thoroughfare of U.S. 190, and the consequent placing of the Beatty remainder on a ‘dead end’ service or frontage road of a mile away from the Fairway Drive Interchange, resulted in a reduction in highest and best use from highway commercial to residential, and resulted in a reduction in land value from 50‡ a square foot to 15fS a square foot, and this Court concurs in these conclusions of Patecek and Lejeune.
“Mr. Breeding concluded that after the taking the remainder would have the same value as before the taking since after the taking, ‘the remainder property will have a highest and best use of light industrial or light commercial, even multifamily use.’ (page 4, Breeding’s appraisal supplement dated February 19, 1973).
“Deano also concluded that after the taking, the remainder would have the same value as before the taking. Deano stated after the taking the remainder '. would not naturally be a location for a retail outlet, it would, however, have use for office, light industrial, religious use, or multifamily use.’ (page 2 Deano’s appraisal supplement dated February 20, 1973), and Deano stated that, '. . .1 am of the opinion that the subject remainder is ideally located for multi-family use .’ (page 3 Deano’s Appraisal supplement dated February 20, 1973).
“Lejeune, who is the owner of numerous apartment units himself, testified that the Beatty remainder land did not have a highest and best use as multi-family residential. The Golden Shores sales that Mr. Deano used to show after value, were not removed a distance of )4 °f a mile from a main thoroughfare, as is the Beatty remainder.
“One property Mr. Deano referred to in his testimony was the Apken remainder in the Northeast quadrant of the Modified Cloverleaf Interchange, which sold and resold several times, the last time being for about $250,000.00 or $20,000.00 an acre. However, Mr. Deano and the other appraisers testified that this Apken tract was specially benefited by the modified cloverleaf design, in that it had visibility from 1-12, and was so situated with respect to the modified cloverleaf interchange that it received substantial special benefits.
“However, Mr. Deano and the other appraisers testified that the Beatty remainder did not receive any special benefits from this modified cloverleaf interchange or I-12, and the Court does not believe that said Apken remainder is comparable to the Beatty remainder.
“Regarding the statutory provision that severance damage should be determined as of the date of trial (R.S. 48:453), the Third Circuit said in State Department of Highways v. William T. Burton Industries, 219 So.2d 837 ([La.App.] 1969):
“ ‘In our view, however, the provision that severance damages be valued as of the date of the trial was statutorily intended to specify that the damages the remainder suffers should be reduced by special benefits which result to it from the completion of the highway construction, not to deprive the landowner of compensation for damages sustained by his tract because of any general increase in the value of land between the taking and the trial. We do not believe that the legislature intended to deprive a landowner of damages to his - property undoubtedly caused him by the taking, simply because — in the long interval between the taking itself and the subsequent completion of the long-term major highway construction project — his prop *908 erty had increased in value due to generally improved economic conditions, along with all lands in the area (and, probably, most other lands in the entire State).
“ ‘The landowners’ damages should not be offset by such a general appreciation in value, any more than it is by general benefits the tract receives because of the improvement. As stated by the Grey decision, cited above “* * * the citizen whose property is taken cannot be compelled to bear more of the cost of the public improvements and general benefits resulting therefrom than is borne by other property owners whose property is neither taken nor damaged for the public purpose.” [Louisiana Highway Comm., 197 La. 942] 2 So.2d [654] 660.’ ”

“Deano and Lejeune testified that if on the date of trial (Feb. 21, 1973), the Beatty remainder had enjoyed direct access to the main thoroughfare of U.S. 190 without the threat of being placed on a service or frontage road and thereby denied direct access to U.S. 190, then the value of the remainder on the day of trial would have been $1.00 per square foot rather than the lower values found by Deano (30$S per square foot), and Lejeune (15f. a square foot), as being the value of the Beatty remainder after the taking with frontage only on the service or frontage road.
“This value of $1.00 per square foot for the Beatty remainder as of the date of trial assuming direct access to U.S. 190, did not result from any special benefits, since all appraisers testified that the Beatty remainder did not receive special benefits, and hence this $1.00 a square foot value resulted from general economic conditions affecting the properties along U.S. 190 that enjoy direct access to U.S. 190.
“The Court also notes that the Baton Rouge Bank and Trust Company voluntarily sold Parcel 50A-1 and Parcel 50A-3 to the State Department of Highways on the 9th day of June, 4971, and the consideration therefor was $37,342 for the part taken, and $93,641 in severance damages, for a total consideration of $130,983.00. After the taking of Parcel 50A-1 and Parcel 50A-3, the Baton Rouge Bank and Trust Co. remainder was located generally across U.S. 190 from the Beatty remainder on a service or frontage road of a. mile distant from the Fairway Drive interchange.
“Based on the testimony of Gerald Fus-sell, engineer and surveyor, portions of the Baton Rouge Bank and Trust Co. remainder were similar in elevation and topography to the Beatty remainder, and other portions of the Baton Rouge Bank and Trust Co. remainder were much lower than the Beatty remainder.
“Even though the Baton Rouge Bank and Trust Co. remainder and the Beatty remainder were generally comparable, the Highway Department offered no evidence to show why the Highway Department paid Baton Rouge Bank and Trust Co. $93,641 in severance damages, but paid Beatty no severance damages. In State Department of Highways v. Cartledge, 258 So.2d 175, 178, Second Circuit (1972), the Court said:
“ ‘Still we feel as the trial judge did that “certainly the voluntary sale to an expropriating authority would indicate that the property is worth no less than that paid voluntarily by the authority, for otherwise it would expropriate . . . ” '
“Many cases have held that voluntary sales to the expropriating authority are admissible in evidence. State Through Department of Highways v. Dodge, 168 So.2d 430 ([La.App.] 1964), State Department of Highways v. Bahry, 129 So.2d 903 ([La.App.] 1961), Eminent Domain in Louisiana, Dakin and Klein, Page 202.
“At page 6 of his appraisal, Patecek said that the Beatty residential improvements had a value of $35,000, but at page 2 of his appraisal, Patecek indicated that the Beatty residential improvements had a value of $34,000. Neither Deano nor Breeding placed a value on these improvements, and *909 the valuation of these improvements in the Patecek appraisal was more detailed than in the Lejeune appraisal, but Patecek offered no explanation as to why he valued the improvements at $35,000 on page 6 of his appraisal, but valued the improvements at $34,000 on page 2 of his appraisal.
“The Court finds that the value of the improvements on the Beatty remainder was $35,000.
“In summary, the Court finds that the before value of the Beatty parent tract was 50‡ a square foot, or $168,534, and that the after value of the remainder was $31,442 (at 15^ a square foot) for the land remainder plus $35,000 for the improvements on the land remainder, for a total after value of $66,442. The difference between the before and after values is $102,092. The value of the part taken is $63,728 (at 50^ a square foot) and when this amount is deducted from the difference between the before and after value ($102,092), it yields the amount of $38,364, which the Court finds to be due as severance damage to the owner.”
In addition we note that it is well settled that inconvenience to the landowner, diversion of traffic or change in attending conditions are not proper elements of severance damages unless they diminish the value of the owner’s remaining property. State, Through Department of Highways v. Daigle, 278 So.2d 525 (3rd La.App. 1973); State, Through Department of Highways v. Hunt, 219 So.2d 602 (1st La.App. 1968), amended 255 La. 513, 231 So.2d 563 (1970).
In the instant suit defendant’s appraisers unequivocally testified that the inconvenience and diversion of traffic which will result from this expropriation diminished the value of defendant’s remaining property by changing its highest and best use from highway commercial to residential. The inconvenience and diversion of traffic are thus proper elements of severance damages in this case.
Therefore, we agree that severance damages are due and we find no manifest error in the amount awarded as severance damages by the trial court.
Accordingly, for the above reasons, the judgment of the district court is affirmed. Plaintiff-appellant is cast for all costs as are permitted by law.
Affirmed.