321 So.2d 878 (1975)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Raymond B. COLBY (Colby Inn, Inc., Substituted).
No. 10382.
Court of Appeal of Louisiana, First Circuit.
September 25, 1975.
Rehearing Denied November 24, 1975.
Writ Refused January 16, 1976.
*880 A. William Mysing, Jr., and Marian M. Livaudais, Covington, for appellant.
William W. Trwin, Jr., Johnie Branch, Jr., Asst. Gen. Counsel, Highway Dept., Baton Rouge, and Alvin J. Liska, Asst. Gen. Counsel, New Orleans, D. Ross Banister, Gen. Counsel, Jerry F. Davis, Asst. Gen. Counsel, New Orleans, for appellee.
Before LANDRY, BLANCHE and BAILES, JJ.
LANDRY, Judge.
Substituted defendant, Colby Inn, Inc. (Owner), appeals from a trial court award of $26,593.00 for the total taking of a 3.559 acre tract belonging to Owner, which property was expropriated by plaintiff (Department), for improvement of U.S. 190, St. Tammany Parish. Owner complains that the amount awarded is inadequate. Owner also urges that the trial court erred in rejecting Owner's claim for expert witness (surveyor's) fees incurred in the preparation of certain maps and plats allegedly essential to the presentation of Owner's case. We amend the judgment to increase the award for the land taken. We affirm that portion of the decree which rejected Owner's claim for the expert witness fees mentioned.
In addition, Owner contends the trial court erred in: allowing the Department to present its case in chief of rebuttal; basing its conclusions as to land value on a report of one of the Department's experts, which report was not introduced in evidence; and accepting conclusions of a Department expert, as to land value, which conclusions are contrary to law and ignore established pertinent facts.
The Department urges affirmation of the judgment rendered. Alternatively, the Department requests a remand to permit introduction of further evidence of land value. The Department also suggests the trial procedure followed was proper considering that in an expropriation proceeding the landowner bears the burden of establishing land values in excess of the Department's deposit. Lastly, the Department contends Owner has waived its right to complain of the trial court's alleged consideration of improper evidence because Owner failed to apply for a new trial as required by LSA-C.C.P. art. 1972.
On June 17, 1971, the Department proceeded pursuant to LSA-R.S. 48:441 et seq. (the quick taking statute), to expropriate subject tract by depositing $12,457.00 into the registry of the Court, and naming Raymond B. Colby as defendant-owner. An order of expropriation ensued on June 22, 1971. The matter remained dormant until May 21, 1973, when Colby excepted on the ground he was not the owner and had not been record owner of subject tract since August 21, 1970, approximately 10 months prior to the filing date herein. The Department amended its petition to name Colby Inn, Inc. as owner and obtained a supplemental expropriation order on June 25, 1973.
Subject tract is an irregularly shaped parcel of land. It is the remainder of a larger tract taken by the Department from
*881 Alcide Apken in 1965, for construction of a diamond design interchange then contemplated for the intersection of U.S.1-12 and U.S. 190, St. Tammany Parish. The taking from Apken left subject tract in the southeast quadrant of the diamond design interchange. The northern boundary abutted the southern boundary of proposed 12 for a distance of 1,306 feet, and would have been separated from said right of way by an access control fence. The western boundary of subject tract abutted the eastern extremity of U.S. 190 right of way, on which it fronted for a total distance of 142 feet, but from which it would have been separated by an access control fence. The southern boundary abutted the northern limits of Ponchitowala Estates Subdivision. The eastern limit of the tract was a point at the intersection of the southern boundary thereof, the southern right of way boundary of I-12 and the northern boundary of Ponchitowala Estates Subdivision. For most of its depth, the tract was 168 feet wide. Road access to the parcel would have been by a proposed service road paralleling U.S. 190 and extending approximately 450 feet northerly from Ponchitowala Drive (which intersects Highway 190), to the southwest corner of subject tract. Visual access to subject tract would have been complete along both 1-12 and 190. The tract would have been free of zoning or other restrictions. Access thereto would also have been provided by means of a dedicated but unconstructed street extending through Ponchitowala Estates Subdivision to the southern boundary of subject tract at a point approximately midway on the southern boundary.
The crucial issue is whether Owner is entitled to the enhanced value of the land resulting from the first taking which contemplated a diamond design interchange, subsequently changed to a modified cloverleaf design, which resulted in the present taking. The jurisprudence is established to the effect that the present taking was for a separate project, one not reasonably foreseeable as a modification or extension of the original plan; consequently owners are entitled to the enhanced values of their properties resulting from the initial expropriation. See State, Through Department of Highways v. St. Tammany Homestead Association, 304 So.2d 765 (La.App.1974).
Upon commencement of trial, counsel for Owner requested permission to submit its case first since the burden rests upon the landowner to establish values in excess of the amount deposited by the Department as alleged just compensation. The trial court ordered the Department to proceed first. The trial court then reminded counsel of an agreement to exchange appraisals at the beginning of trial. Owner's counsel tendered copies of its appraisals. Counsel for the Department declined to present its appraisals, taking the position that it would present its evidence first.
The Department then produced two experts, Edward J. Deano, Jr. and Henry B. Breeding, Jr., both of whom, upon instruction from the Department, valued the property without benefit of the enhanced value resulting from the diamond design interchange originally contemplated.
Mr. Deano deemed the best and highest use of the land to be commercial. In keeping with the premise that no enhanced value resulted from the first taking, Deano used three comparables, all situated outside the proposed diamond interchange. In this manner, he determined the value of subject tract to be $4,000.00 per acre, or a total of $14,236.00.
Mr. Breeding found the front (western) 350 feet of the tract to be commercial. Using three comparables to value this portion, Breeding arrived at a value of $12,800.00 per acre or $15,360.00 for this part. The rear portion was deemed by Breeding to be residential with an indicated value of $2,000.00 per acre, or $2,718.00 for this portion. He thus arrived at a total value of $18,078.00 for the whole.
*882 Both Deano and Breeding indicated the nearest access to subject tract from Highway 190 was approximately one mile. This is clearly erroneous. Plats of the interchange introduced by Owner, hereinafter discussed, show that access to Highway 190 is gained by travel 450 feet along a service road to Ponchitowala Drive, which intersects Highway 190.
Owner called Frank J. Patecek as an expert appraiser. Mr. Patecek considered subject tract's best and highest use to be commercial, as land adjoining the diamond interchange. Patecek stated he could find no true comparables, meaning no sales of land within the limits of the 1-12/190 interchange. For this reason, he utilized sales of lands situated within the interchange at I10 and Gause Road some distance away, at the outskirts of Slidell, Louisiana. Patecek valued subject land as enhanced by the taking for the diamond design interchange. Mr. Patecek noted the excellent location and adaptability of subject tract as a motel site adjacent to a diamond interchange. He pointed out that access to subject tract from Highway 190 was available by travel along a service road 450 feet to Ponchitowala Drive. He also noted the very fine visual access of subject tract to I10 along the entire 1300 foot northern boundary of subject property. The 1-10-Gause Road interchange, where Patecek selected his comparables, is quite similar to the 1-12/190 interchange. Included among Patecek's comparables are two motels and a truck stop. All of the comparables are situated behind control of access fences; none are first off locations; none have as good visual access to Gause Road as subject tract has to Highway 190. Patecek also noted that the traffic count on 190 at the 1-12 interchange was 12,200 daily during 1971, while the count on Gause Road was 1,020 for the same period. Patecek valued the property at 55 cents per square foot, or $85,226.50 for the whole.
Kermit Williams, testifying for Owner, considered subject tract's best and highest use, abutting 1-12, to be highway commercial and particularly adapted to a motel site. Williams employed seven comparables in reaching his valuation. None were situated within the 1-12/190 interchange. However, all fronted directly on U.S. 190, within one and one-half miles to the south and three-quarters of a mile to the north of subject tract. None of the comparable tracts had visual access to 1-12. Williams made adjustments to compensate for subject tract's lack of direct access to Highway 190. He employed a time adjustment factor of 1% Per month in reaching his valuation. We note that transactions cited in support of this time adjustment factor amply support his conclusion in this respect. Mr. Williams concluded subject land was worth $23,325.00 per acre, or $83,014.00 for the whole.
Owner also produced Eddie J. Champagne, Surveyor, who identified a series of engineering drawings prepared by his firm under his personal supervision. These exhibits show in detail the location and relationship of subject property to the original diamond design interchange, and the subsequent change thereof to a modified cloverleaf design. They also reveal all relevant aspects of the property's location in each instance and indicate the location, shape and size of all comparables utilized by Owner's appraisers.
The trial court admitted these offerings subject to the Department's objection, but refused to tax as costs Champagne's fee for preparing the exhibits. The trial court concluded the exhibits were unnecessary and of no material aid in determining the question of value. Relying upon U.S. Constitution Amendments 5 and 14, and Louisiana Constitution 1921, Article I, Section 2, which provide for due process and compensation to owners for property taken for public purposes, Owner maintains he is entitled to recover Champagne's fees, as well as all other expenses incurred herein, to make Owner whole.
No citation of authority is needed in support of the principle that expert *883 witness fees incurred by an owner in defense of an expropriation proceeding brought against him are recoverable. As indicated by Owner, recovery of such fees are necessary in order to make the owner whole. However, such fees are not recoverable by an owner unless incurred in the presentation of evidence which aids the court in determining an issue or issues involved in the litigation. If the Owner presents evidence which proves to be of no probative value, he does so at his own expense. We are of the view that in assessing the probative value of such evidence, much discretion is vested in the trial court, whose decision in the matter will not be disturbed on appeal except in case of a manifest abuse thereof. In this instance, the trial court concluded that Champagne's charts were unnecessary and of no assistance to the court. From the record we find no abuse of the trial court's discretion in this regard.
After presentation of Owner's case, the Department called Mr. Breeding in rebuttal. Owner objected to Breeding's testimony concerning an alternative appraisal pursuant to which Breeding valued the land as enhanced by the original taking for a diamond design intersection. The testimony was offered by the Department in rebuttal of that by Owner's experts concerning the enhanced value of the property. The Department contended in effect that if enhanced value was to be considered, the amount thereof testified by Owner's experts was excessive.
Owner complains that the trial court improperly admitted this rebuttal evidence contending that such evidence should properly have been offered when the Department presented its case in chief. Owner also contends the rebuttal offered represents a complete reversal of the Department's position in chief concerning the enhanced value question and was therefore improper rebuttal. In support of this contention, Owner cites and relies upon Joiner v. Gafford, 32 So.2d 756 (La.App.).
In further support of its position, Owner points out that on June 22, 1971, the Department deposited $12,451.00 into the registry of the court as compensation for the land taken. The deposit was based on the Department's contention that no enhanced value was due from the original taking. The appraisal on which the deposit was made does not appear of record although it is conceded such an appraisal was in fact made. In presenting the Department's case in chief, Breeding and Deano valued subject property without benefit of enhanced value from the prior taking. Deano's appraisal exceeded the deposit by $1,800.00; Breeding's appraisal was $5,700.00 higher than the deposit. The rebuttal appraisals of Deano and Breeding are dated June 27, 1974 and July 1, 1974, respectively. Trial of this matter was held October 9, 1974.
Owner argues that before trial, the Department was prepared to abandon its contention that compensation for land taken should not include enhanced value resulting from the former expropriation. Owner also argues that at this time, the Department was aware of the decision redered by this court in State, Through Department of Highways v. Beatty, 288 So.2d 900 (La.App.), which decision settled the issue of whether the taking for a cloverleaf interchange for subject intersection was a second taking, and which decision became final when the Supreme Court refused writs therein on April 11, 1974. Owner points out that this same result was reached in State, Through Department of Highways v. Covington Interstate, Inc., 295 So.2d 828 (La.App.), and State, Through Department of Highways v. Wax, 295 So.2d 833 (La.App.), rendered September 19, 1974.
We find the testimony offered by the Department was proper rebuttal as held by the trial court. While it is true, the Department consistently argued no enhanced *884 value was due as a result of the prior taking, nevertheless, the Department was entitled to show on rebuttal, if it could, that the enhanced value attested by Owner's experts was excessive. We find no inconsistency in this position. Joiner, above, relied upon by Owner, is factually inapposite.
Mr. Breeding's rebuttal appraisal is of no probative value. In making this particular appraisal, Mr. Breeding employed two comparables. One was the purchase of subject property by the original defendant, Ray Colby, from Apken, on May 3, 1968, for the unit price of $7,025.00 per acre. The other was a transfer from Apken to North Lake Properties, on October 29, 1971, indicating a unit price of $5,081.00 per acre. The sale to North Lake occurred four months after the present taking. Breeding's testimony virtually concedes the North Lake transaction was not a proper comparable since it postdated the taking. Moreover, our jurisprudence is settled to the effect that post expropriation sales are not considered as probative in determining market value of land at the time of expropriation. State, Through Department of Highways v. Christy, 283 So.2d 533 (La.App.).
We also find the use of subject tract as a comparable to be of no probative value under the circumstances of this case. The change from diamond design to modified cloverleaf design interchange was first announced in November, 1968. The first attempt at expropriation herein was on June 22, 1971. It is conceded that subsequent to November, 1968, subject tract was effectively out of commerce and any sale thereof could not reflect its true market value, if it sold at all in the interim. However, the tract was in fact sold in the interim when, on August 20, 1970, Raymond Colby transferred the land to Colby Inn, Inc., for a recited consideration of $107,000.00. If the sale of subject tract were the proper criteria for fixing market value, it would appear the value has been established at $107,000.00. To allow a sale of property, made after its pending expropriation has become known, to fix its market value for condemnation purposes, would lead to results which are obviously to be avoided. Such a principle is in direct derogation of the well established rule that market value, for condemnation purposes, is that price paid as between a willing and informed buyer and a willing and informed seller, in the ordinary course of business, calculated upon the best and highest use of the land involved, State, Through Department of Highways v. Spillman, 276 So.2d 905 (La.App.).
Although Deano's rebuttal appraisal report is found in the record transmitted from the district court, it was never introduced by the Department. Deano's testimony on examination in chief makes no reference to this report other than the fact it had been made. Deano was not called by the Department on rebuttal. The record discloses that in fixing its award herein, the trial court relied primarily upon Deano's report which was not offered in evidence. In this regard, the trial court erred. Items of evidence which are physically placed in the record of a cause, but which are not properly introduced and admitted in evidence by the trial court, may not be considered by any tribunal in deciding the merits of the case. Mackie Pine Products Co. v. Frederick, 148 La. 687, 87 So. 712.
We conclude the only credible evidence of record concerning the value of subject property is that of the experts, Patecek and Williams. Their appraisals appear well reasoned and founded upon judicially sanctioned appraisal formulas and techniques. We are particularly impressed with Williams' appraisal and adopt it as the measure of damages to be awarded in this instance.
*885 Under the circumstances, we do not deem the Department entitled to a remand to further litigate the issue of enhanced value. The Department was well aware alleged enhanced value would be a prime issue herein, and had ample opportunity to offer evidence on this question. For reasons best known to itself, the Department chose the procedure hereinabove indicated. We note that it would avail the Department nothing to have Deano's report properly introduced in evidence. Two of the three comparables Deano used in this appraisal are the same as the two utilized by Breeding, and which have been discussed above. Consideration of Deano's report would not change the outcome of this action.
It is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby amended in that the award in favor of defendant Colby Inn, Inc. against plaintiff, State of Louisiana, Through the Department of Highways, be and the same is hereby increased to the sum of eighty-three thousand fourteen and No/100 ($83,014.00) dollars, subject to a credit of twelve thousand four hundred fifty-seven and No/100 ($12,457.00) dollars, together with interest on the sum of seventy-thousand five hundred fifty-seven and No/100 ($70,557.00) dollars from June 22, 1971, until paid.
It is further ordered, adjudged and decreed that the expert witness fees of Frank Patecek and Kermit Williams, appraisers, be and the same are hereby fixed at the sum of one thousand five hundred and No/100 ($1,500.00) dollars, each, and that the judgment rejecting expert witness' fees for Eddie Champagne, surveyor, be and the same is hereby affirmed; the State of Louisiana, Through the Department of Highways, being cast for all costs taxable against it under the law.
Amended and rendered.